Nursing Home of Dothan ("Dothan") petitioned this Court to issue a writ of certiorari to review the holding of the Court of Civil Appeals, 542 So.2d 935, affirming the judgment of the Montgomery Circuit Court, which had upheld the denial by the State Health Planning and Development Agency ("SHPDA") of Dothan's application for a certificate of need ("CON"), to construct a 110-bed nursing home. Named as defendants in this action were the SHPDA and its executive director, the CON Review Board members, and the Governor of the State of Alabama. The Alabama Medicaid Agency intervened in the action, and we permitted the Alabama Nursing Home Association to file an amicus curiae brief. We issued the writ, and we affirm the judgment of the Court of Civil Appeals.
In 1983, Dothan filed an application for a CON so that it could construct a 110-bed nursing home in Houston County, Alabama. Code of Alabama 1975, § 22-21-266,[1] requires that the issuance of a CON be consistent with the State Health Plan ("SHP"). Under the SHP in effect in 1983, only 36 beds were deemed necessary for Houston County, thus causing Dothan's application to be denied as inconsistent with the SHP. Members of the SHPDA advised Dothan that an alternative to SHPDA approval was to request an amendment to the SHP so that bed need in Houston County might be increased. Dothan suspended its application for the CON pending the outcome of the request for the amendment submitted to the State Health Coordinating Council ("the Council"). The Council is an advisory body whose function is to formulate the SHP and submit it to the Governor for approval.[2] The amendment sought by Dothan would have changed the method of determining the bed need for Houston County to show increased need. A public hearing was held by the Planning and Development Committee of the Council, which recommended approval of the proposed amendment by the full Council. The Council approved the amendment and submitted it to the Governor for his approval; however, he vetoed the proposed amendment.
In January 1984, the Governor dismissed the CON Review Board, and that dismissal prevented a timely review of Dothan's application. In April 1984, a newly appointed CON Review Board scheduled its first business meeting for May 1984, and Dothan's application was placed on the agenda for that meeting. Dothan petitioned for injunctive relief from the Montgomery County Circuit Court to prevent the CON Review Board from reviewing its application, and argued that its application was outside *Page 942 
the time frame.[3] The court disagreed and remanded the matter to the CON Review Board for an administrative review of the application.
After a full evidentiary hearing, the CON Review Board denied Dothan's application, making the following findings:
 "(1) The application was inconsistent with the State Health Plan.
 "(2) The application for a new nursing home was not the least costly alternative."
 "(3) No threat to public health had been demonstrated."
Dothan requested a fair hearing before a hearing officer. Following a full hearing before the hearing officer, at which much of the evidence was reiterated, the hearing officer affirmed the decision of the CON Review Board denying the CON to Dothan. The hearing officer's order reflected the following:
 "(1) All parties agreed that the application was inconsistent with the SHP.
 "(2) That alternative services were available and [were] being expanded at less cost than institutional services.
 "(3) That no evidence was presented to support applicant's proposition that people went to nursing homes outside the area due to a lack of a new facility. There was an adequate supply of beds in the area."
Dothan appealed that decision to the Circuit Court of Montgomery County. It included an allegation that the Governor's veto of the proposed amendment to the SHP was illegal. The circuit court held, after reviewing the Council record, that the denial of the CON was supported by evidence before the CON Review Board and, further, that the Governor's veto of the proposed amendment to the SHP was in compliance with statutory mandates. On appeal, the Court of Civil Appeals affirmed the circuit court's decision and subsequently denied Dothan's application for rehearing.
Petitioner raises three issues to be addressed in this matter:
 1) Whether the Governor lawfully vetoed the amendment to the GHP adopted by the Council.
 2) Whether a final order of a state agency in a contested case is proper when it fails to address issues raised in administrative proceedings and when such action represents a departure from prior findings.
 3) Whether the administrative proceedings complied with the Alabama Administrative Procedure Act (AAPA).
 I.
After submission to the Governor by the Council of the approved proposed amendment to the SHP, the Governor vetoed it, using the following response:
 "I regret that I am unable to approve the proposed plan adjustment request. My staff and I have reviewed the matter and believe it is not in the best interest of the State to approve additional nursing home beds at this time."
We are asked in this petition to determine whether the Governor's response was an adequate and lawful veto under then-existing state and federal statutes. We must determine whether the Governor's response was inadequate as a veto by measuring the requirement of specificity in 42 U.S.C. § 300m-3(c)(2)(C) (repealed effective Jan. 1, 1987, see Pub.L. 99-660, Title VII, § 701(a), Nov. 14, 1986, 100 Stat. 3799), when the Governor addresses the health care needs of the citizens of the State. The Governor additionally said that funds were not available to finance additional beds for Dothan. Dothan argues that a statement of the inadequacy of funds does not present the lawful explanation required by 42 U.S.C. § 300m-3(c)(2)(C), and does not present valid reasons for disapproving the amendment. The Alabama Nursing Home Association joins Dothan's position that the federal courts have consistently recognized that the inability of a state to fund its Medicaid program sufficiently to meet a *Page 943 
state's health care needs cannot be used as an excuse for failing to meet the state's health care needs. They citeAlabama Nursing Home Ass'n v. Califano, 433 F. Supp. 1325, 1330
(M.D.Ala. 1977); Potter v. James, 499 F. Supp. 607, 610
(M.D.Ala. 1980); Alabama Nursing Home Ass'n v. Harris,617 F.2d 388, 396 (5th Cir. 1980). They offer these cases to support the proposition that the unavailability of Medicaid funds is not an appropriate basis for determining bed needs under applicable federal regulations, 42 C.F.R. § 121.201, et seq. (rev'd Oct. 1, 1986). Both Dothan and the Alabama Nursing Home Association point out that the then-existing SHP, approved by the Governor, contained a 15-day approval requirement whereby if a proposed amendment were not disapproved within the 15-day period after submission to the Governor, the proposed amendment automatically became effective. They suggest that the Governor did not lawfully veto the amendment within the 15-day period and, therefore, that the proposed amendment became effective, thus making the findings of the subsequent SHPDA hearings of no consequence.
SHPDA counters by arguing that 42 U.S.C. § 300m-3(c)(2)(C) is the relevant statute and that it does not require the Governor to outline his reasons for vetoing the proposed amendment. SHPDA argues that only if the SHP is, in its entirety, vetoed would the Governor be required to make a detailed statement of the basis for the veto and what is necessary to improve the plan or to make it acceptable to the Governor. Supporting this view is 42 U.S.C. § 300m-3(c)(2)(B), which establishes the procedures for public hearings by the Council in both the "preparation and revision" of the SHP. The last sentence of (C) states that the requirements of (B) do not apply to revisions of the SHP. When an amendment seeking revision of an existing plan is disapproved by the Governor, he thereby has determined that no changes are necessary and that, logically, the requirement for the statement of the changes needed should not apply. The above cases cited by Dothan, which stand for the proposition that a Governor could not use cost effectiveness or the inadequacy of funds as grounds for his veto of an SHP amendment, involve facilities that were already constructed and operating and which were also participating in a number of reimbursement programs, and all of the challenges in those cases involved either costs already incurred or the discontinuance or reduction of programs already instituted. In this case, cost is a valid consideration, and to not consider the cost effectiveness of a proposed amendment would be in contravention of the policy consideration underlying 42 U.S.C. § 300m-3(c)(2)(C), which is to provide citizens with access to adequate health care in the most cost-efficient manner.[4] The Fifth Circuit Court of Appeals case of Mississippi HospitalAss'n, Inc. v. Heckler, 701 F.2d 511 (5th Cir. 1983), interpreting Alabama Nursing Home Ass'n v. Harris, 617 F.2d 388
(5th Cir. 1980), held that states could consider cost efficiency in adopting reimbursement plans and stated:
 "The plaintiffs claim that the plan is invalid because it was created out of a desire to cut costs. They point to language in Alabama Nursing Home where we stated:
 " 'A state is not obligated to participate in the Medicaid program. However, once it has voluntarily elected to participate in the program, the state must comply with the federal standards. Inadequate state appropriations do not excuse noncompliance.'
 517 F.2d at 396 (citations omitted). This language should not be read to mean that states cannot consider cost efficiency in adopting reimbursement plans, or that courts should engage in some type of motivation analysis. It means only that budgetary constraints cannot excuse *Page 944 
a failure to comply with federal standards."
701 F.2d at 518.
In the instant case, there was no federal or state law or regulation setting out criteria that the Governor was bound to consider.
The arguments presented by the SHPDA and the Alabama Medicaid Agency are persuasive. We hold that the Governor's veto of the proposed amendment was lawful. After a thorough review of 42 U.S.C. § 300m-3(c)(2)(C), and all applicable Alabama statutes, we conclude that there is no requirement of an extensive explanation by the Governor upon the veto of a proposed amendment.
 II.
We are asked by petitioner to rule on whether the SHPDA complied with the Alabama Administrative Procedure Act ("AAPA") in its findings. We hold that it did.
Petitioner first challenges the administrative findings on constitutional grounds, arguing that its constitutional right to due process of law was violated by what it perceived as uncertainty and vacillation in the decisions made by the SHPDA.Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287
(1970); and Willner v. Committee on Character and Fitness,373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963). Dothan contends that once the bed need was established by the Council, the SHPDA acted as if there were not a bed need. The inconsistency in the findings of the administrative agencies violates precedent of this Court, Dothan says, and it cites MobileCounty Gas District v. Mobile Gas Service Corp., 284 Ala. 664,671, 227 So.2d 565 (1969). Dothan claims that the response by the SHPDA denying Dothan's application for a CON was inadequate because it tracked the applicable statute, Code of Alabama 1975, § 22-21-266(1) et seq., without providing a detailed explanation of the administrative funding as required by §41-22-16(b).
The SHPDA responds by saying that Dothan failed to preserve the issue for appellate review and that Dothan's objection regarding the tracking of the statute was too vague to require action by the hearing officer during the SHPDA hearing. It cites Bevill v. Owen, 364 So.2d 1201 (Ala. 1979), for the principle that an appellate court cannot find error in the trial court's failure to rule on an issue not presented to it in such a way that a timely determination could be made.
On the other hand, the SHPDA argues that the statements made by the SHPDA Board denying the CON were in compliance with the AAPA, § 41-22-16(b), in light of the testimony presented during the hearing. SHPDA cites the findings and the evidence presented that it says supports the findings:
 "1. DOTHAN'S CON APPLICATION WAS INCONSISTENT WITH THE SHP:
 "Evidence was presented that there were empty nursing home beds in Houston County and its neighboring counties.
 "2. THE SHPDA BOARD DETERMINED THAT THE APPROVAL OF ADDITIONAL NURSING HOME BEDS IN HOUSTON COUNTY WAS NOT THE LEAST COSTLY ALTERNATIVE FOR THE CARE OF THE ELDERLY:
 "Evidence was presented that the most cost efficient manner of treating elderly or infirm persons was the establishment of programs providing home health care for such individuals. Testimony from officials of the Alabama Medicaid Agency testified that the state could not afford the additional cost of the nursing home beds proposed by Dothan.
 "3. NO THREAT TO PUBLIC HEALTH WAS PRESENTED IN THE FAILURE TO APPROVE THE ADDITIONAL NURSING HOME BEDS BY THE SHPDA BOARD:
 "Evidence presented by the Alabama Medicaid Agency and Houston County Health officials revealed that no such threat existed, and that furthermore the evidence was compelling in light of the fact that all the available bed space in the existing nursing homes was not full." *Page 945 
Finally, the SHPDA asserts that a decision of an administrative agency is to be presumed correct and cannot be overturned unless it is unsupported by legal evidence, is arbitrary or capricious, or is outside the power conferred on the agency by law. They refer to Ferlisi v. Alabama Medicaid Agency,481 So.2d 400 (Ala.Civ.App. 1985), in support of this proposition.
The Alabama Medicaid Agency argues that all hearings in this matter complied with Spivey v. City of Florence, 480 So.2d 598
(Ala.Civ.App. 1985), which held that minimum compliance with §41-22-15, i.e., apprising the applicant of the agency's decision, is acceptable and is to be affirmed by a reviewing court. It further argues that no constitutional violation occurred in this hearing, see Lynnwood Property Owners Ass'n v.Lands Described in Complaint, 359 So.2d 357 (Ala. 1978), because, it says, there was no deprivation of property without procedural due process.
We hold that learned counsel for Dothan did preserve this issue for appellate review through his objections made during the administrative hearing on this matter, but his objections are without merit. Section 41-22-2 of the AAPA states:
 "(a) This chapter is intended to provide a minimum procedural code for the operation of all state agencies when they take action affecting the rights and duties of the public. . . ."
Section 41-22-16(b) states:
 "(b) Findings of fact, if set forth in a manner which is no more than mere tracking of the statutory language, shall be accompanied by a concise and explicit statement of the underlying facts of record which support the findings. If, in accordance with agency rules, a party submitted proposed findings of factor filed any written application or other request in connection with the proceeding, the order shall include a ruling upon each proposed finding and a brief statement of the grounds for denying the application or request."
In this matter, the statute "tracked" was § 22-21-266. We are of the opinion that the purpose of § 41-22-16(b) is to provide the unsuccessful applicant for administrative relief with an adequate explanation of the reasons for the denial. In this matter, after a thorough review of the testimony, we must hold that Dothan was constructively apprised of the reasons for the SHPDA Board's decision in this matter. The testimony presented during the hearing comported with the findings of the SHPDA. Although we cannot hold that the SHPDA strictly complied with the requirements of § 41-22-16(b), it did meet the minimum standards set forth in the statute, in that it did apprise Dothan of its reasons for its denial of the application for the CON. We do not expect the technical precision from non-lawyer administrative boards that is expected of judges in the drafting of judgments and orders. We further hold that the actions of the SHPDA did comport with the procedural due process requirement stated in Willner v. Committee on Characterand Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), which is that the requirement of fairness in the hearing must extend to the conclusion of the process, and must be applied at all intermediate steps.
For the foregoing reasons, the judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
[1] Section 22-21-266 reads as follows:
 "No certificate of need for new inpatient facilities or services shall be issued unless the SHPDA makes each of the following findings:
 "(1) That the proposed facility or service is consistent with the latest approved revision of the appropriate state plan effective at the time the application was received by the state agency;
 "(2) That less costly, more efficient or more appropriate alternatives to such inpatient service are not available, and that the development of such alternatives has been studied and found not practicable;
 "(3) That existing inpatient facilities providing inpatient services similar to those proposed are being used in an appropriate and efficient manner consistent with community demands for services;
 "(4) That in the case of new construction, alternatives to new construction (e.g., modernization and sharing arrangement) have been considered and have been implemented to the maximum extent practicable; and
 "(5) That patients will experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service."
[2] 42 U.S.C. § 300m-3(c) mandates that the Council review any proposed amendments to the SHP before submission to the Governor for his approval.
[3] Dothan argues that the Governor's veto of the proposed amendment was unlawfully made and that the then-effective SHP stated that an amendment to the SHP would be considered confirmed by the Governor unless it was disapproved by him within 15 days after submission.
[4] Alabama Medicaid cites: 42 U.S.C. § 300k(a), (b), and §§ 300k-2(a)(12), (13) and 300k-2(b)(2); Code of Alabama 1975, §22-21-261.