564 So.2d 63 (1990)
Ex parte SHELBY MEDICAL CENTER, INC.
Ex parte BESSEMER CARRAWAY MEDICAL CENTER.
Ex parte ST. VINCENT'S HOSPITAL.
Ex parte AMI BROOKWOOD MEDICAL CENTER.
Re STATE HEALTH PLANNING AND DEVELOPMENT AGENCY
v.
AMI BROOKWOOD MEDICAL CENTER, et al..
88-820, 88-877, 88-878 and 88-883.
Supreme Court of Alabama.
February 16, 1990.
Rehearing Denied April 12, 1990.
*65 Michael S. Jackson of Beers, Anderson, Jackson & Smith, Montgomery, for petitioner Shelby Medical Center, Inc.
Roy J. Crawford and Helen Currie Foster of Cabaniss, Johnston, Gardner, Dumas, & O'Neal, Birmingham, for petitioner Bessemer Carraway Medical Center.
Susan Dominick Doughton and Terry McElheny of Dominick, Fletcher, Yeilding, Wood, & Lloyd, Birmingham, for petitioner St. Vincent's Hosp.
James A. Holliman and Candice J. Shockley of Holliman, Shockley, Kelly & Acker, Bessemer, for petitioner AMI Brookwood Medical Center.
Don Siegelman, Atty. Gen., and Margaret S. Childers, Asst. Atty. Gen., for respondent.
SHORES, Justice.
These petitions involve the issuance in May 1986 of a certificate of need ("CON") by the State Health Planning and Development Agency ("SHPDA") to the Lloyd Noland Foundation to construct a hospital in the Riverchase area of southern Jefferson and northern Shelby Counties. In 1982, SHPDA had denied the applications of six other hospitals for a CON to build a hospital in the same area. The six hospitals appealed from this denial. In May 1984, while the appeal was pending before the Montgomery County Circuit Court, Lloyd Noland filed its CON application with SHPDA. The circuit court enjoined SHPDA from hearing the application until the appeal involving the other six hospitals was decided. On November 28, 1984, the circuit court affirmed SHPDA's denial of the CON to the six hospitals, holding that SHPDA's decision was not arbitrary or capricious and that there was no community need in southern Jefferson and northern Shelby Counties for an acute care hospital.
Meanwhile, on August 1, 1984, Governor Wallace had issued Executive Order 28, placing a moratorium on the filing, acceptance, and processing of CON applications. On January 14, 1986, a fourth amendment to the moratorium was issued. Under this amendment, the moratorium no longer prohibited the relocation of a health care facility if the relocation did not result in the addition of new beds or services. Then on October 27, 1986, a fifth amendment to Executive Order 28 was issued, extending *66 the moratorium to cover new hospital construction "under the guise of `relocation.'" Under this amendment, relocations could be approved only if the relocation was necessary to replace an existing general acute care hospital in its entirety because of its physical condition.
SHPDA held a hearing on May 13, 1986, to consider Lloyd Noland's CON application. Both a motion to deny and a motion to approve the application failed for lack of a second. The nine-member Review Board then voted by written ballot, approving the CON by a vote of 4 to 2. One member of the Review Board, Dr. Leon Hamrick, had recused himself because he was also the medical director, chief of surgery, and president of the board of trustees of Lloyd Noland.
Following this decision, AMI Brookwood Medical Center, Bessemer Carraway Medical Center, Shelby Medical Center, and St. Vincent's Hospital filed appeals, which were consolidated before the Circuit Court of Jefferson County, Bessemer Division. Brookwood, St. Vincent's, and Shelby Medical Center had applied for a CON in 1981 and 1982 and their applications had been denied. The circuit court reversed and vacated SHPDA's decision to grant Lloyd Noland a CON, finding that SHPDA's order was clearly erroneous in light of the reliable, probative, and substantial evidence on the whole record. Lloyd Noland and SHPDA appealed to the Court of Civil Appeals, which reversed the circuit court's ruling and ordered the lower court to reinstate SHPDA's decision. The Court of Civil Appeals also held that the appellee hospitals (hereinafter "the hospitals"), had waived the right to challenge alleged statutory violations by SHPDA by not cross-appealing from the circuit court's final order.
On rehearing, 564 So.2d 54, the Court of Civil Appeals held that a cross-appeal was unnecessary to preserve for review the issues of res judicata and collateral estoppel, whether the majority-vote requirement of the Alabama Administrative Procedure Act ("AAPA") had been met, and whether the Alabama Sunshine Act applied, but that a cross-appeal was necessary for the hospitals to request a remand of the case to SHPDA to make required findings of fact. The court held that res judicata and collateral estoppel were inapplicable and that SHPDA's vote met the AAPA majority-vote requirement. The court did not decide whether the secret ballot violated the Alabama Sunshine Act, nor did it make the requested corrections and additions to its statement of facts. See Rule 39(k), A.R. App.P. The court refused to undo its reversal of the circuit court's order and again ordered that it reinstate SHPDA's decision to issue Lloyd Noland a CON. Thereafter, the four hospitals petitioned this Court for a writ of certiorari.
The hospitals argue that SHPDA committed procedural and statutory errors by failing to obtain a majority vote of the entire CON Review Board, by voting by written ballot, and by failing to include written findings of fact in its final order. The hospitals also claim that collateral estoppel and res judicata apply to SHPDA's 1982 denial to the original six applicants and to the Montgomery Circuit Court's affirmance of that denial, that there was insufficient evidence to support SHPDA's grant of a CON to Lloyd Noland, and that the Governor's moratorium prohibited the issuance of the CON to Lloyd Noland.

I. Majority vote

The nine-member CON Review Board approved this CON application by a vote of 4 to 2. The hospitals argue that approval by a majority of the entire nine members was required, while SHPDA and Lloyd Noland claim that approval by a majority of a quorum was sufficient. We agree with SHPDA and Lloyd Noland, as did the Court of Civil Appeals, that a majority of a quorum is sufficient. Alabama Code 1975, § 41-22-15, provides that "in a contested case, a majority of the officials of the agency who are to render the final order must be in accord for the decision of the agency to be a final decision." Under § 41-22-3(8), a "quorum," defined as a majority of the members of an agency, is authorized to act in the name of the agency. Thus, construing these two statutes together, we conclude that only a majority *67 of a quorum is required to approve an agency decision. Further, SHPDA regulations provide that parliamentary procedure be observed within the discretion of the chairman of the CON Review Board according to Robert's Rules of Order. Rule 410-1-3-08, State Health Planning Agency (1979). According to Robert's Rules of Order, unless agency rules dictate otherwise, a majority of a quorum is sufficient to approve an agency's acts. Robert's Rules of Order, 3 (Newly Revised, 1981). The vote in this case met this requirement, in that four of the six members of the nine-member Review Board approved the CON.

II. Vote by written ballot

The hospitals claim that SHPDA's vote by written ballot violates the Alabama Sunshine Act, § 13A-14-2, Code 1975. This Act prohibits executive or secret sessions by certain state agencies, including SHPDA, and provides for a fine of $10 to $500 for violation of the Act. The Sunshine Act does not prohibit vote by written ballot. Even if it did, the Act does not render void actions taken in violation of its provisions. Ex parte Alabama Public Service Commission, 376 So.2d 665 (Ala. 1979).
CON statutes and SHPDA regulations do not prescribe a particular method of voting but, as noted earlier, provide that parliamentary procedure be observed within the discretion of the chairman of the CON Review Board according to Robert's Rules of Order. That authority provides that a vote can be taken by written ballot, if this manner of voting is approved by a majority vote, when it is believed that a secret vote will lead to a truer result. Robert's, 240, 348. In this case, two voice votes had been inconclusive. Thus, a vote by written ballot was appropriate. The change in voting method was not approved by a majority vote, as it should have been. However, this procedural flaw did not prejudice substantial rights of the hospitals. The chairman asked if there were any objections, and none of the members of the CON Review Board and none of the speakers objected to the manner of voting. Since there was no timely objection, any objection was waived. 73A C.J.S. Public Administrative Law and Procedure, § 191, pp. 211-12 (1983).

III. Moratorium

The hospitals claim that the fifth amendment to the Governor's moratorium prohibits the issuance of a CON to Lloyd Noland. Lloyd Noland's CON application was filed in May 1984. Executive Order 28, dated August 1, 1984, imposed a moratorium on the filing, acceptance of, consideration of, and acting upon CON applications. The fourth amendment to this order, dated January 14, 1986, provided that the moratorium "no longer relates to the relocation of a health facility ... not result[ing] in the addition of new beds or services." Lloyd Noland's application was heard and approved by the CON Review Board in May 1986. The fifth amendment, dated October 27, 1986, extended the moratorium to apply to new hospital construction "under the guise of relocation," except in the case of relocation necessary to replace an existing general acute care hospital or nursing home in its entirety because of its physical condition.
The hospitals claim that the fifth amendment merely clarifies the executive order and that the prior amendments, including the fourth amendment, must be interpreted in light of the fifth amendment. They claim that the fifth amendment makes it clear that the moratorium was never intended to allow costly new hospitals to be created from existing hospitals' licensed bed capacity. The fifth amendment, however, does not indicate that it is to have retroactive application, nor that it is to void results of hearings conducted under the fourth amendment. The amendment states that the moratorium "shall relate" to relocations and, that under certain conditions, total relocations are possible under the moratorium "as hereby amended." Thus, the moratorium had been effectively lifted by the fourth amendment at the time of the hearing on Lloyd Noland's application.
Further, the hospitals argue that even if the fourth amendment allowed the hearing on Lloyd Noland's application, the fifth *68 amendment prohibits the actual issuance of the CON and resulting construction of the hospital. This argument is now moot because the moratorium expired on June 19, 1989, pursuant to the ninth amendment to Executive Order 28.

IV. Res judicata and collateral estoppel

The hospitals claim that the doctrines of res judicata and collateral estoppel precluded SHPDA from making findings contrary to its 1982 denial to the original six applicants for a CON for a hospital in Riverchase, and that the doctrines of res judicata and collateral estoppel bind Lloyd Noland and SHPDA to the Montgomery County Circuit Court's decision upholding that denial.
The applicability of the doctrine of res judicata requires:
"(1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits."
Wheeler v. First Alabama Bank, 364 So.2d 1190, 1199 (Ala.1978). The doctrine of collateral estoppel applies when:
"(1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision."
Pantex Towing Corp. v. Glidewell, 763 F.2d 1241, 1245 (11th Cir.1985). The circuit court and the Court of Civil Appeals held that neither res judicata nor collateral estoppel applied in this case because they found no identity of parties and issues.
Lloyd Noland was not bound to the Montgomery Circuit Court decision by res judicata or collateral estoppel, because it was not a party to that decision, it was not privy to a party, and its interests were not adequately represented by a party in the earlier suit. Whisman v. Alabama Power Co., 512 So.2d 78, 82 (Ala.1987). The record is insufficient to determine whether SHPDA was precluded by res judicata or collateral estoppel from arguing in the Montgomery Circuit Court that there was a need for Lloyd Noland's proposed facility. The record does not contain the prior applications nor SHPDA's denial of the applications, only the order of the Montgomery Circuit Court affirming the denial. Further, res judicata and collateral estoppel would not preclude SHPDA itself from granting Lloyd Noland's CON application, but rather the issue would be whether the doctrine of stare decisis would preclude SHPDA from making a determination inconsistent with the prior denial of a CON to other applicants for a facility in the same area. Because there is need for flexibility in administrative decisionmaking, the doctrine of stare decisis generally does not bind administrative agencies to their prior decisions. Thus, when inconsistent determinations are made by an administrative agency, the issue is whether the agency has acted in an arbitrary and capricious manner. 73A C.J.S. Public Administrative Law and Procedure § 157, pp. 144-46 (1983). Again, the record is insufficient for us to make this determination, because we do not have before us the evidence presented to the CON Review Board by the prior applicants.

V. Sufficiency of the evidence

The Court of Civil Appeals ruled that substantial evidence supported each of the findings required by Alabama Code 1975, § 22-21-266. Under § 22-21-266, SHPDA must make each of the following findings before granting a CON for new inpatient facilities or services:
"(1) That the proposed facility or service is consistent with the latest approved revision of the appropriate state plan effective at the time the application was received by the state agency;
"(2) That less costly, more efficient or more appropriate alternatives to such inpatient service are not available, and that the development of such alternatives has been studied and found not practicable;

*69 "(3) That existing inpatient facilities providing inpatient services similar to those proposed are being used in an appropriate and efficient manner consistent with community demands for services;
"(4) That in the case of new construction, alternatives to new construction (e.g., modernization and sharing arrangement) have been considered and have been implemented to the maximum extent practicable; and
"(5) That patients will experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service. (Acts 1977, 1st Ex.Sess., No. 82, p. 1509, § 7; Acts 1982, 2nd Ex.Sess., No. 82-770, p. 249, § 6.)"
Pursuant to Alabama Code 1975, § 41-22-20(k), SHPDA's decision granting the CON is to "be taken as prima facie just and reasonable and [a reviewing] court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." However, the court can "reverse or modify the decision ... if [it is] clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Alabama Code 1975, § 41-22-20(k)(6). The circuit court found that the decision was clearly erroneous. The Court of Civil Appeals, however, found that SHPDA's decision was not clearly erroneous, because, it held, substantial evidence supported each of the requirements of § 22-21-266. We reverse the judgment of the Court of Civil Appeals, because we conclude that SHPDA's decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
First, we hold that the record does not support a finding of consistency with the State Health Plan ("SHP"). SHPDA and Lloyd Noland claim that the proposed facility is consistent with the SHP because it involves relocating beds rather than adding beds to the area. The SHP is designed to allocate health care resources in such a way that health care services are available and accessible at reasonable costs. The basis for state health planning is the projection of bed needthe number of acute general hospital beds needed five years in the future. Under the bed-need methodology approved September 1, 1983, Jefferson County was projected to have 373 excess beds in 1988, while Shelby County was projected to need 16 beds in 1988. Technically, Lloyd Noland's proposal would not violate the bed-need methodology, because it would not add newly licensed beds to the area. However, 40% of the beds it seeks to relocate are beds that are not staffed at its Fairfield facility. Constructing a new $26,270,000 hospital in an overbedded area, relocating currently unstaffed beds into the new hospital, and providing duplicative services in the new hospital do not promote the SHP goal of cost containment. In Humana Medical Corp. v. State Health Planning & Dev. Agency, 460 So.2d 1295 (Ala.Civ.App.1984), it was determined that there was no community need to relocate 31 beds into an already existing hospital in an area with an excess of 160 beds and with occupancy rates at hospitals in the county below 80%. Here, there is even less evidence of community need. Jefferson County was projected to be overbedded by 373 beds by 1988, 157 beds were proposed to be relocated, and the average occupancy for area hospitals was below 70%.
Second, there was evidence of less costly, more efficient, or appropriate alternatives to the proposed service. As noted by the circuit court, Lloyd Noland has been innovative in providing prepaid medical plans; however, by the time of the hearing on its application, there were at least seven other prepaid plans provided by other area hospitals. The evidence showed that less costly alternatives were available through these plans.
Third, the record indicates that existing inpatient facilities with services similar to those proposed are not being used in an appropriate and efficient manner consistent with community demands. The record indicates that, while the population in the proposed service area is increasing, the occupancy rates for surrounding hospitals are falling. Lloyd Noland and SHPDA *70 provided evidence of population growth. However, Bessemer Carraway provided statistics from the Health Planning Agency and the Alabama Hospital Association showing that occupancy rates for area hospitals are falling and that the average occupancy for area hospitals is below 70%.
Fourth, according to the evidence, alternatives to new construction have not been considered or implemented to the maximum extent practicable. Lloyd Noland considered alternatives beneficial to it, but did not consider alternatives beneficial to the community. The needs of the Fairfield residents could be met by the renovation of the Fairfield facility. It was not shown that the residents of southern Jefferson County and northern Shelby County needed a relocation of beds from Lloyd Noland. Sharing arrangements with other hospitals were not considered. Lloyd Noland argues that such arrangements were not feasible because Lloyd Noland's physicians accept Medicaid and Medicare, and they contend that physicians at the other hospitals would not. This claim is irrelevant, because the average household income for the area ($42,172) and the low percentage of persons over age 65 (8%) do not indicate a need for Medicaid or Medicare in the area.
Fifth, the record reflects that patients will not experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service. The record indicates that the services offered would duplicate those offered by existing facilities in the area. As noted by the circuit court, Brookwood Hospital is eight miles from the proposed service area, Shelby Medical Center is 10 miles away, and Bessemer Carraway is 11 miles away. The Court of Civil Appeals stated that financial accessibility is a factor as well as geographic accessibility, and noted that there was evidence that Lloyd Noland and its doctors would accept Medicare and Medicaid patients that other facilities' doctors would not. We agree that financial accessibility is a factor, but, as noted above, the evidence does not indicate a need for Medicaid or Medicare services in the proposed service area. While Lloyd Noland showed a need for such services at its Fairfield facility, those needs could be met by the renovation of that facility. Also, the Court of Civil Appeals found that evidence presented by Lloyd Noland regarding the population growth in the area and an alleged maldistribution of beds in Jefferson County supported a finding of need for the proposed facility. The population in the proposed service area has grown in the past few years, yet this growth does not support a finding of need for a new hospital. While the population has grown, occupancy rates in area hospitals have fallen. Lloyd Noland also claims there is a maldistribution of beds in the greater Birmingham area which has resulted in southern Jefferson and northern Shelby Counties being underserved. Lloyd Noland, however, provided no evidence of maldistribution to support this claim. The requirement of § 22-21-266(5) was not met.

VI. Failure to make findings of fact

In its final order, SHPDA did not make any written findings of fact other than tracking the language of the CON statute, § 22-21-266. Section 41-22-16(b) of the AAPA requires that "findings of fact, if set forth in a manner which is no more than mere tracking of the statutory language, shall be accompanied by a concise and explicit statement of the underlying facts of record which support the findings." The rationale for this requirement is to facilitate judicial review of administrative decisions and to protect against careless or arbitrary decisions. See commentary to § 41-22-16.
SHPDA makes two claims in response to this failure to make factual findings. First, it argues that the findings required by § 22-21-266 are the required factual findings. Second, it argues that if the proper findings were not made, the only remedy is a remand to it to make such findings and that a reversal of its order is not an appropriate remedy.
The ultimate findings required by § 22-21-266 are not the underlying findings of fact required by § 41-22-16(b). We *71 recognized in Ex parte Nursing Home of Dothan, Inc., 542 So.2d 940 (Ala.1989), that a mere tracking of § 22-21-266 is not strict compliance with § 41-22-16(b). In that case, however, we held that there was minimum compliance with the AAPA because the applicant was "constructively apprised of the reasons for SHPDA['s] ... decision" in view of the testimony presented at the CON hearing. Id. at 945. We noted that the testimony presented supported SHPDA's findings. In this case, however, there is insufficient evidence in the record to support the § 22-21-266 findings. Because it is not clear from the record what reasons or facts SHPDA relied on in making the § 22-21-266 findings, § 41-22-16(b) is not satisfied. Because SHPDA's decision on the merits must be reversed for insufficiency of the evidence to support it, it is unnecessary to determine whether the case should be remanded or reversed for inadequate factual findings.

Conclusion
We hold that SHPDA's decision granting a CON to Lloyd Noland was clearly erroneous, because the record did not contain substantial evidence to support the findings required by § 22-21-266. We reverse the Court of Civil Appeals' judgment and remand with instructions that it affirm the circuit court's judgment vacating SHPDA's decision.
REVERSED AND REMANDED WITH DIRECTIONS.
HORNSBY, C.J., and JONES, ADAMS and HOUSTON, JJ., concur.
STEAGALL, J., concurs in the result.
MADDOX, J., concurs in part and dissents in part.
KENNEDY, J., recused.
MADDOX, Justice (concurring in part; dissenting in part).
I concur with Sections I, II, III, and IV, which address the claims that SHPDA committed certain procedural and statutory errors, such as failing to obtain a majority vote of the entire CON Review Board, voting by written ballot, and failing to include sufficient findings of fact in its final order, and the further claims that collateral estoppel and res judicata apply to an earlier denial by SHPDA of a CON, and that the Governor's moratorium prohibits the issuance of a CON to Lloyd Noland Hospital. I must respectfully disagree, however, with the holding by the Court "that SHPDA's decision granting a CON to Lloyd Noland was clearly erroneous, because the record did not contain substantial evidence to support the findings required by § 22-21-266."
The effect of this holding is that the Court has substituted its own judgment for that of the Certificate of Need Review Board, the administrative agency designated by law to make the determination. The Court first holds "that the record does not support a finding of consistency with the State Health Plan (`SHP')," even though SHPDA, the agency responsible for policing and implementing the SHP, argues that there is no inconsistency. After making this holding, the Court then engages in an independent weighing of the evidence and concludes that "[c]onstructing a new $26,270,000 hospital in an overbedded area, relocating currently unstaffed beds into the new hospital, and providing duplicative services in the new hospital do not promote the SHP goal of cost containment." The Court then finds that "there was evidence of less costly, more efficient, or appropriate alternatives to the proposed service," and then cites, with approval, a circuit court determination that there were less costly alternatives available through prepaid medical plans. Additionally, the Court found that "the record indicates that existing inpatient facilities with services similar to those proposed are not being used in an appropriate and efficient manner consistent with community demands," that "alternatives to new construction have not been considered and implemented to the maximum extent practicable," and that "the record reflects that patients will not experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service."
The role of courts generally in reviewing an administrative agency's determination is *72 stated in Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984):
"When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
"`The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' Morton v. Ruiz, 415 U.S. 199, 231 [94 S.Ct. 1055, 1072, 39 L.Ed.2d 270] (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.
"We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations
"`has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations. See, e.g., National Broadcasting Co. v. United States, 319 U.S. 190 [63 S.Ct. 997, 87 L.Ed. 1344]; Labor Board v. Hearst Publications, Inc., 322 U.S. 111 [64 S.Ct. 851, 88 L.Ed. 1170]; Republic Aviation Corp. v. Labor Board, 324 U.S. 793 [65 S.Ct. 982, 89 L.Ed. 1372]; Securities & Exchange Comm'n v. Chenery Corp., 332 U.S. 194 [67 S.Ct. 1575, 91 L.Ed. 1995]; Labor Board v. Seven-Up Bottling Co., 344 U.S. 344 [73 S.Ct. 287, 97 L.Ed. 377].
"`... If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' United States v. Shimer, 367 U.S. 374, 382, 383 [81 S.Ct. 1554, 1560, 1561, 6 L.Ed.2d 908] (1961).
"Accord, Capital Cities Cable, Inc. v. Crisp, [467 U.S. 691] at 699-700 [104 S.Ct. 2694 at 2700-2701, 81 L.Ed.2d 580 (1984)]."
467 U.S. at 842-45, 104 S.Ct. at 2781-83.
In exercising its independent assessment of the evidence and the actual need for a community hospital at the proposed location, the Court unfortunately has expanded the role of the judiciary in reviewing administrative action. The scope of judicial review is clearly set out in the Alabama Administrative Procedure Act, Ala.Code 1975, § 41-22-20(k):
"(k) Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized *73 by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency, or where no such statutory standards for judicial review are applicable to the agency, if substantial rights of the petitioner have been prejudiced because the agency action is:
"(1) In violation of constitutional or statutory provisions;
"(2) In excess of the statutory authority of the agency;
"(3) In violation of any pertinent agency rule;
"(4) Made upon unlawful procedure;
"(5) Affected by other error of law;
"(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
"(7) Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
The area where the proposed community hospital is proposed to be located is in the heart of one of the fastest growing areas of the State, and indeed, the nation. The fact that some of the petitioners had earlier requested a CON for the same area, and the fact that petitioners argue, albeit without success, that the prior determinations by the Board on those requests collaterally estop the Board from awarding the CON to Lloyd Noland, is evidence that would support the Board's determination of the "need" question.
The awarding of certificates of need, the setting of utility rates, the granting of motor carrier certificates, the granting of ABC licenses, the regulation of banks, zoning, and a myriad of other regulatory functions are vested in administrative boards and agencies that supposedly are in the best position to determine what is and what is not in the public good. Courts have a function in the process, but only where the decision of the administrative agency is clearly erroneous, "[u]nreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." § 41-22-20(k)(7). I cannot find, as does the majority, that the Board's action here fits either of those categories.
I recognize the national concern with mounting health costs, and I recognize that providing health services has become a highly competitive business; this record contains substantial evidence of this competitiveness and of gubernatorial interest in the problem; nevertheless, I feel that the Court, in exercising its own independent review of the evidence, has weighed the evidence anew on the basic question and has, therefore, broadened the scope of judicial review, and has necessarily substituted its judgment for that of the administrative agency charged by law with the responsibility of protecting the public interest.
Based on these reasons, I must respectfully disagree with the Court's reversal of the judgment of the Court of Civil Appeals, which, I find, applied the proper scope of judicial review in this case.