PITTMAN, Judge.
This appeal concerns the propriety of an administrative order denying authority to a hospital to operate a cardiac-surgery center.
On August 28, 2000, Baptist Health System, Inc. (“Baptist”), which operates Shelby Baptist Medical Center (“Shelby Baptist”) in Alabaster, filed an application with Alabama’s State Health Planning and Development Agency (“SHPDA”) seeking a Certificate of need (“CON”) permitting Baptist to offer therapeutic cardiac cathet-erization and open-heart surgery at Shelby Baptist. Brookwood Health Services, Inc., which operates Brookwood Medical Center (“Brookwood”) in southern Jefferson County, sought to intervene and requested a contested-case hearing (see § 41-22-12, Ala.Code 1975); after Brookwood was permitted to intervene, a hearing was conducted before an administrative law judge (“ALJ”).
After that hearing, the ALJ issued a 24-page document containing recommended findings of fact and conclusions of law on March 6, 2002; in that document, the ALJ opined that SHPDA’s Certificate of Need Review Board (“CONRB”) should approve the Shelby Baptist CON application. However, upon review of the ALJ’s recommendations, SHPDA’s CONRB issued an order on May 2, 2002, denying the CON application. In pertinent part, the CONRB’s order contained the following determinations:
“After careful review of the record, the Recommended Order and the exceptions thereto, the [CONRB] has determined that the ALJ reached the wrong conclusions in applying the applicable review criteria to his factual findings. In so doing, the CON[RB] is not rejecting the ALJ’s Recommended Findings of Fact, which are hereby adopted to the extent the same are not inconsistent with this Order.
“... Ala. Admin. Code [r.] 410-1-2.03 states that ‘in the absence of a designated geographical service area for a particular service, the county in which the service is to be provided shall be deemed to be the health service area.’ Ala. Admin. Code [r.] 410-2-3-03(3) addresses open-heart surgery[;] however, this particular subsection of the State Health Plan (SHP) does not designate a specific health service area.[1] For this reason, the ALJ found that the ‘health service area’ in [this case] was Shelby County, where the services proposed are to be provided. Planning Policy 3 requires that ‘There shall be no additional adult open heart units initiated unless each existing unit in the health service area is operating and is expected to continue to operate at a minimum of 350 *532 adult open heart operations per year.’ Id. (emphasis added). Since there were no other open-heart providers in Shelby County, the [ALJ] found that the application was consistent with the guideline contained in Planning Policy 3.
“... In other instances, the SHP and the SHPDA Rules refer generally to a provider’s ‘service area’ as opposed to the defined term ‘health service area’. In [a 1998 order issued in another contested case], the [CONRB] found that while SHPDA rules arguably provide that the ‘health service area’ for purposes of Planning Policy 3 should be limited to the county in which the service is provided, other statutes and regulations give the [CONRB] the right to consider the impact of the project on providers outside of the county. In upholding this finding, the Fair Hearing Officer stated:
“ ‘The [CONRB] correctly recognized that while the “health service area” mentioned in Planning Policy 3 may, according to [r.] 410-1-2-.03 of the SHPDA Rules, pertain to Calhoun County, the consideration of the impact on Birmingham open heart surgery programs is required under [r.] 410 — 1—[6—].06(l)(e) which states in pertinent part:
“ ‘ “When the service area of the proposed facility or service overlaps the service of an existing facility or service, then the effect on the existing service or facility ... shall be considered.” ’
“... Ala.Code [1975,] § 22-21-266(3) ... requires a finding that ‘existing inpatient facilities providing inpatient services similar to those proposed are being used in an appropriate and efficient manner consistent with community demands for services,’ ie., there must be a community need for the proposed service. Such a conclusion must be made prior to the approval of any new inpatient facilities or services. Id.
“... The [CONRB] finds, as a matter of law, that it may consider the impact of the Shelby Baptist proposal on Brook-wood and similarly situated facilities, the manner in which such facilities are currently available to serve the needs of the patients in Shelby Baptist’s proposed service area, and the quality of service provided by such high volume, established sites to area residents.2 Taking these factors into consideration, the [CONRB] differs with the conclusions reached by the [ALJ] as to need and finds that the project should be denied.”
“⅛ contrast, Ala. Admin. Code [r.] 410-2-3-03(1) which addresses cardiac catheterization services specifically mentions counties in its planning policies.
“2 The [CONRB] notes that Shelby County considers the patient base of the proposed facility to extend beyond Shelby County.”
Because the CONRB’s order was issued after the application had already been considered by an ALJ as a contested case, and because reconsideration of the CONRB’s decision was not sought, the denial of the application by the CONRB constituted the “final order” of SHPDA under Ala.Code 1975, § 22-21-275(14), as amended in 1998.[1]
*533 Baptist sought judicial review in the Shelby Circuit Court of SHPDA’s denial of the CON application; Brookwood was permitted to appear in those review proceedings as an intervenor. After all of the judges of the circuit court had recused themselves, the Chief Justice of the Alabama Supreme Court appointed a judge from another circuit to decide the case. On July 13, 2004, the circuit court entered a judgment reversing the denial of the Shelby Baptist CON application and directing SHPDA to issue the requested CON. The circuit court’s judgment of reversal was based upon three stated grounds: (1) the CONRB’s alleged failure to articulate the standards it utilized in determining that the CON application was due to be denied; (2) the CONRB’s alleged failure to apply the same standards utilized in approving CON applications pertaining to open-heart services in four other counties; and (3) the CONRB’s alleged failure to sufficiently justify rejecting the findings and recommendations of the ALJ. Both SHPDA and Brookwood appealed from the judgment of the circuit court.
We set forth at length the applicable principles of review in Colonial Management Group, L.P. v. State Health Planning & Development Agency, 853 So.2d 972, 974-75 (Ala.Civ.App.2002):
“This court reviews a trial court’s judgment regarding the decision of an administrative agency ‘without any presumption of its correctness, since the [trial court] was in no better position to review the [agency’s decision] than’ this court. Under the Alabama Administrative Procedure Act (‘AAPA’), § 41-22-1 et seq., Aa.Code 1975, which governs judicial review of agency decisions,
“ ‘[e]xcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“ ‘(1) In violation of constitutional or statutory provisions;
“ ‘(2) In excess of the statutory authority of the agency;
“ ‘(3) In violation of any pertinent agency rule;
“ ‘(4) Made upon unlawful procedure;
“ ‘(5) Affected by other error of law;
“ ‘(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
*534 “ ‘(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.’
“ § 41-22-20(k), Ala.Code 1975 (emphasis added [in Colonial Management ]). In reviewing the decision of a state administrative agency, ‘[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law.’ ‘The weight or importance assigned to any given piece of evidence presented in a CON application is left primarily to the [CONRB’s] discretion, in light of the [CONRB’s] recognized expertise in dealing with these specialized areas.’ Neither this court nor the trial court may substitute its judgment for that of the administrative agency. ‘This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.’ Further, ‘an agency’s interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.’ ”
853 So.2d at 974-75 (citations omitted). See also State Health Planning & Dev. Agency v. Baptist Health Sys., Inc., 766 So.2d 176 (Ala.Civ.App.1999), and State Health Planning Agency v. Mobile Infirmary Ass’n, 608 So.2d 1372 (Ala.Civ.App.1992).
Mindful of that deferential standard of review, we now turn to whether the three grounds cited by the circuit court support the reversal of the CONRB’s decision. We first consider whether CONRB did not adequately articulate the standards it utilized in denying Shelby Baptist’s CON application. The benchmark by which a reviewing court is to judge the sufficiency of an agency’s statement of its reasons for acting in a particular manner in a contested case is that established by the Alabama Supreme Court in Ex parte Nursing Home of Dothan, Inc., 542 So.2d 940, 945 (Ala.1989): whether a party has been “constructively apprised of the reasons” for a particular decision by virtue of express findings in an administrative order or evidence presented during the contested-case hearing. Accord, Montgomery Rehab. Hosp. v. State Health Planning Agency, 610 So.2d 403, 409 (Ala.Civ.App.1992). As the Supreme Court aptly stated in Nursing Home of Dothan, “[w]e do not expect the technical precision from non-lawyer administrative boards that is expected of judges in the drafting of judgments and orders.” 542 So.2d at 945.
Ala. Admin. Code, r. 410-1-6-05(1), states that before approval of a proposed health-care project can be granted, a “determination of a substantially unmet public requirement for the proposed health care facility, service, or capital expenditure” must be made. In his proposed findings of fact and conclusions of law, the ALJ isolated the issue of community need for open-heart services as the “major focal point of disagreement” between Shelby Baptist and Brookwood. For his part, the ALJ analyzed the community-need issue based upon analysis of whether Shelby County, which he deemed to be the pertinent “health service area,” needed an indigenous open-heart surgery provider. In doing so, the ALJ made a number of determinations that were intermediate to his recommended conclusion that the CON be granted, including that no more effective alternatives to the proposed Shelby Baptist facility existed and that Shelby Baptist’s proposal was consistent with the most recent State Health Plan (“SHP”). However, the CONRB implicitly rejected those intermediate determinations, as well as the ALJ’s ultimate conclusion of need. *535 The CONRB’s order reveals that its rejection of the ALJ’s determinations was based upon express determinations that it could “consider the impact of the Shelby Baptist proposal on Brookwood and similarly situated facilities,” as well as “the manner in which stick facilities are currently available to serve the needs of the patients in Shelby Baptist’s proposed service area” and “the quality of service provided by such high volume, established sites to area residents” (emphasis added).
Clearly, from the face of its order, the CONRB indicated that it had weighed the potential effect of granting Shelby Baptist’s CON application on Brookwood and other Jefferson County-based open-heart-surgery facilities more heavily than did the ALJ. In doing so, the CONRB could also have weighed certain aspects of the evidence adduced at the administrative hearing in a manner different from the ALJ. For example, while the ALJ, in his recommended findings of fact and conclusions of law, cited demographic evidence indicating that Shelby County’s overall population and its population over the age of 45 years had increased dramatically in recent years, other evidence adduced at the hearing tended to show that overall demand for open-heart surgery at Jefferson County’s then-existing 21 open-heart operating rooms, including Baptist’s programs at Montclair and Princeton, had declined by 11% despite that increase in population, a decline attributable partly to a higher incidence of cardiac catheterization and stenting procedures. Evidence was also adduced at the administrative hearing indicating that, as a general rule, the level of a medical provider’s open-heart-surgery caseload (whether a surgeon or a facility) is directly related to the likelihood of a positive surgical outcome for a patient served by that medical provider, and the logical inference could have been drawn that approval of a new open-heart-surgery facility in the vicinity of seven existing such facilities would reduce the aggregate quality of cardiac care.[2]
We conclude that the decision of the CONRB, in light of the administrative record and the statements contained in the CONRB’s order, constructively apprised Shelby Baptist of the reasons why its CON application was denied. The circuit court, therefore, erred in sustaining Shelby Baptist’s challenge to the CONRB’s decision based upon that ground.
We next consider the circuit court’s conclusion that the CONRB failed to sufficiently justify rejecting the findings and recommendations of the ALJ. In Forest Manor, Inc. v. State Health Planning & Development Agency, 723 So.2d 75 (Ala.Civ.App.1998), a majority of this court intimated that where an administrative agency rejects findings made by a designated hearing officer, the agency’s decision must be based upon stronger supporting evidence than in cases where those findings are accepted. However, in Colonial Management, supra, this court “rethought” that absolute rule, acknowledging that while some deference to the findings of an agency’s hearing officer is due when there is conflicting testimony and witness demeanor is material, “many CONRB deci *536 sions involve an analysis of statistical and demographic data that is unaffected by an assessment of witness credibility and demeanor.” 853 So.2d at 976. Indeed, this court went so far as to adopt a statement from the dissenting opinion in Forest Man- or to the effect that “ ‘the ALJ’s recommendation is not a binding order on the parties, and the SHPDA regulations do not require that the CONRB give any deference to an ALJ’s recommendation.’ ” 853 So.2d at 976 (emphasis added; quoting Forest Manor, 723 So.2d at 82 (Crawley, J., dissenting, joined by Thompson, J.)).
In light of the principles espoused in Colonial Management, we must conclude that the circuit court erred in requiring the CONRB to justify its rejection of the ALJ’s recommendation to grant Shelby Baptist’s CON application. The ALJ’s recommended findings of fact and conclusions of law, although somewhat detailed, contain no indication that the ALJ’s determinations were in any way based upon the credibility or lack of credibility of- any witness. Rather, the parties to the contested case principally argued the merits of their positions based upon statistical tendencies and demographic data — evidence whose nature places it plainly outside the scope of what remains of the Forest Manor “stronger-supporting-evidence” rule.
The final ground of reversal stated by the circuit court in its judgment is that the CONRB’s decision is arbitrary because the CONRB purportedly failed to apply the same standards to Shelby Baptist’s application that the CONRB utilized in approving CON applications pertaining to open-heart services in four other counties. As to that basis of reversal, we note that our Supreme Court has recognized that consistency in administrative rulings is “essential” and that “[t]o act in one manner in one case and the opposite manner in another case, where the circumstances are the same in all material respects, would be to act arbitrarily or, at best, unreasonably.” Mobile County Gas Dist. v. Mobile Gas Serv. Corp., 284 Ala. 664, 671, 227 So.2d 565, 571 (1969) (emphasis added). However, in the same case, our Supreme Court quoted WOKO, Inc. v. FCC, 153 F.2d 623, 631 (D.C.Cir.), rev’d on other grounds, FCC v. WOKO, Inc., 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946),[3] for the proposition that the doctrine of stare decisis does not apply to administrative decisions. 284 Ala. at 671, 227 So.2d at 571; accord, Ex parte Shelby Med. Ctr., Inc., 564 So.2d 63, 68 (Ala.1990) (“Because there is need for flexibility in administrative decisionmaking, the doctrine of stare decisis generally does not bind administrative agencies to their prior decisions.”).
Shelby Baptist, both in the circuit court and in this court, has contended that the denial of its CON application is wholly inconsistent with SHPDA’s actions in granting open-heart CON applications submitted by providers in five other counties. The record on appeal contains only two of the five CONRB orders upon which Shelby Baptist has based its arbitrariness argument (and only two of the four CONRB orders cited by the circuit court), and we are therefore constrained to limit our inquiry as to this issue to the circumstances of those two orders that appear in the record. See Ex parte Shelby Med. Ctr., Inc., 564 So.2d at 68 (holding that where the evidence presented to the CONRB by prior applicants was not in the record on appeal, the record was “insufficient” to determine whether the CONRB had acted arbitrarily).
*537 An examination of the particular circumstances of those two CON applications, to the extent that the record allows this court to compare those dispositions, does not conclusively demonstrate that the circumstances in those cases are “the same in all material respects” as those present here. One of the allegedly inconsistent orders involved a CON application where the intervening opponents of the application were a “joint program” subject to a smaller minimum open-heart operation load requirement specified in a different SHPDA regulation.[4] The CONRB’s order in that case further cited evidence that the applicant (unlike Shelby Baptist) had lost half of its cardiology practitioners because of the lack of an open-heart program and had experienced difficulties recruiting replacement physicians. In the second ostensibly “comparable” CON case, the CONRB’s order granting the requested CON expressly relied upon the lack of opposition from any other provider of open-heart services claiming that the proposal in that case would have an adverse impact upon any existing provider of the proposed services, whether in or out o/the applicant’s county. Consideration of that factor mirrors the CONRB’s approach in this case, which was to consider the potential effects upon nearby out-of-county open-heart-surgery providers such as Brookwood that would result from granting Shelby Baptist’s CON application.
Shelby Baptist claims that the CONRB’s order denying its CON application in this case is also inconsistent with three additional CONRB orders. However, Shelby Baptist’s appellate brief cites only to a portion of one of the two CONRB orders appearing in the record and to testimony of one of its witnesses at the administrative hearing as substantiating that claim. That evidence does not approach the level of sufficiency set forth in Ex parte Shelby Medical Center, Inc., supra, that would allow a reviewing court to compare, in any thorough and reasoned manner, the circumstances in those cases with those present in this case, and the circuit court plainly erred in basing its conclusion of arbitrariness upon those decisions.
Whether to grant a requested CON in one case and to deny a requested CON in another, allegedly similar, case falls squarely within the discretion of the CONRB, as our holding in State Health Planning Agency v. Mobile Infirmary Ass’n, 608 So.2d 1372 (Ala.Civ.App.1992), demonstrates:
“The trial court held that SHPA’s [i.e., the State Health Planning Agency’s] refusal to grant a CON to Mobile Infirmary was ‘arbitrary and capricious’ in part because SHPA had earlier granted [another hospital’s] CON application for a cath lab, despite that hospital’s lack of a heart-surgery unit, although the [SHP] recommends that as a prerequisite. While recognizing the discrepancy, we are not prepared to say that this was ‘arbitrary and capricious’ on SHPA’s part. The [SHP] guidelines are merely a set of criteria used in processing applications and SHPA is entitled to exercise its discretion in following these guidelines. SHPA weighed the factors and *538 granted a CON for a cath lab to [the other hospital], despite its lack of a heart-surgery unit. Review of that determination was not before the trial court, nor is it before this court in this case. Neither this court nor the circuit court may substitute its judgment for that of the administrative agency.”
608 So.2d at 1374-75 (citations omitted). We conclude that the CONRB’s denial of Shelby Baptist’s CON application based upon concerns that other open-heart-surgery providers in the nearby area would be adversely affected was not arbitrary or capricious, and the circuit court erred in entering its judgment to the contrary.
Based upon the foregoing facts and authorities, we conclude that the circuit court erred in reversing the order of the CONRB denying Shelby Baptist’s CON application and that its judgment is due to be reversed and the cause remanded. However, in so doing, we note that the regulatory background upon which the CONRB acted has been substantially altered during the pendency of SHPDA’s and Brookwood’s appeals. On October 18, 2004, SHPDA adopted an amendment to the SHP substantially altering “Planning Policy 3” relied upon by the CONRB in the order under review; that policy now reads:
“There shall be no additional adult open heart units initiated unless each existing unit in the county is operating and is expected to continue to operate at a minimum of 350 adult operations per year; provided, that to insure availability and accessibility, one adult open heart unit shall be deemed needed in each county not having an open heart surgery unit in which the current population estimate (as published from time to time by the Center for Business and Economic Research, University of Alabama) exceeds 150,000 without consideration of other facilities, wherever located.”
Ala. Admin. Code, r. 410-2-3-.03(2)(b)3. (emphasis added). We have not considered the effect, if any, of that amendment in deciding these appeals.
REVERSED AND REMANDED.
CRAWLEY, P.J., and BRYAN, J., concur.
THOMPSON, J., concurs in the result, without writing.
MURDOCK, J., dissents, without writing.

. Under § 22-21-275(14) before its 1998 amendment, decisions of the CONRB were customarily subject to another layer of administrative review under which a “fair hearing officer” ("FHO”) would consider the propriety of the CONRB's decision in a particular case; the decision of the FHO, not the CONRB, was then deemed to be the final decision of SHPDA. E.g., Forest Manor, Inc. v. State Health Planning & Dev. Agency, 723 *533 So.2d 75, 79-80 (Ala.Civ.App.1998). However, as we noted in Colonial Management Group, L.P. v. State Health Planning & Development Agency, 853 So.2d 972, 976 (Ala.Civ.App.2002), "[u]nder the current statutory provisions, if a party does not seek a fair hearing before it appeals the CONRB's decision to the circuit court,” or if such a hearing may not be properly sought because an ALJ has already conducted a contested-case hearing, "the CONRB’s decision becomes the final decision of SHPDA.”

. Although the SHP states that in order "to prevent duplication of existing resources which may not be fully utilized, the opening of new open heart surgery units should be contingent upon existing units operating, and continuing to operate, at a level of at least 350 operations per year” (Ala.Admin.Code, r. 410-2-3-.03(2)(a)4.), evidence was adduced at the administrative hearing indicating that one of the seven Jefferson County open-heart-surgery facilities had performed no more than 305 such operations in any year between 1995 and 2000 and that a second facility had seen its operations per year decline from 620 to 409 during that period.

. In reversing the appellate court's judgment in WOKO, the United States Supreme Court held that the administrative agency in that case was not bound "to deal with all cases at all times as it has dealt with some that seem comparable.” 329 U.S. at 228, 67 S.Ct. 213.

. "In some areas, open-heart surgical teams, including surgeons and specialized technologists, are utilizing more than one institution. For these institutions, the guidelines may be applied to the combined number of open-heart operations performed by the surgical team where an adjustment is justifiable and promotes more cost-effective use of available facilities and support personnel. In such cases, in order to maintain quality care, a minimum of 75 open-heart operations in any institution is advisable.” Ala. Admin.Code, r. 410-2-3-.03(2)(a)6.