610 So.2d 403 (1992)
MONTGOMERY REHABILITATION HOSPITAL, INC., d/b/a Montgomery Rehabilitation Hospital
v.
STATE HEALTH PLANNING AGENCY and the Houston County Healthcare Authority, d/b/a Southeast Alabama Medical Center.
2900758.
Court of Civil Appeals of Alabama.
July 17, 1992.
Rehearing Denied August 21, 1992.
Certiorari Denied December 11, 1992.
*404 M. Roland Nachman, Jr. and Dorman Walker of Balch & Bingham, Montgomery, and John T. Brennan, Jr. of Bonner & O'Connell, Washington, D.C., for appellant Montgomery Rehabilitation Hosp., Inc.
Margaret Johnson McNeill and W. Mark Anderson III, Montgomery, for appellee State Health Planning Agency.
J. Donald Reynolds, Montgomery, and J. Marbury Rainer and Armando L. Basarrate of Parker, Hudson, Rainer & Dobbs, Atlanta, GA, for appellee Southeast Alabama Medical Center.
Alabama Supreme Court 1911873.
RUSSELL, Judge.
Montgomery Rehabilitation Hospital, Inc., appeals from the judgment of the Circuit Court of Montgomery County upholding the State Health Planning Agency's decision to issue Southeast Alabama Medical Center a certificate of need to build a physical rehabilitation hospital in Dothan, Alabama. We affirm.
In October 1989 Southeast Alabama Medical Center (Southeast), a hospital owned and operated by the public healthcare authority of Houston County, requested that the Statewide Health Coordinating Council (SHCC) adjust Rule 410-2-4-.05 (hereinafter, the "Rehabilitation Rule") of the 1988-1992 State Health Plan (SHP) to allow for the operation of 26 new physical rehabilitation beds in the Dothan area. The SHCC is a state agency whose primary functions are to prepare, review, and revise the SHP and to advise the State Health Planning Agency (SHPA) on matters relating to health planning and development in Alabama. Ala.Code 1975, § 22-21-260(2) and (4). At the time of Southeast's request, subsection (5) of the Rehabilitation Rule read as follows:
"Accessibility-Distribution.
Inpatient rehabilitation services appear to be well distributed in the most populous regions of Alabama, with the possible exception of the Dothan area in Southeast Alabama. Should accessibility problems be encountered for patients in that area, an adjustment process to the State Health Plan would address the issue."
Southeast contended that Dothan area residents were encountering geographic and *405 economic barriers to access to rehabilitation services and that it was therefore necessary for the SHCC to adjust the SHP and the Rehabilitation Rule to reflect a need for such services in the area.
At a meeting held on December 7, 1989, the SHCC approved Southeast's request and revised the Rehabilitation Rule to indicate a need for 26 rehabilitation beds in the Dothan area. In effecting Southeast's request, the SHCC followed the procedures for "plan adjustments" set forth at SHP Rule 410-2-5-.05. The Governor subsequently approved the revision to the Rehabilitation Rule, and accordingly, on December 27, 1989, the revision became part of the SHP.
In January 1990, shortly after the revision went into effect, Southeast filed an application with SHPA seeking a certificate of need (CON) for the construction and operation of a 26-bed physical rehabilitation hospital on the same campus as its existing acute care hospital in Dothan. The issuance of a CON by SHPA is a prerequisite to the offering or operation of any new institutional health service in this state. § 22-21-265(a), Ala.Code 1975. The purpose of the CON process is to prevent the construction of unnecessary and inappropriate health care facilities within the state by disallowing health care providers from offering medical services and making capital expenditures not sanctioned by the SHP. § 22-21-261, Ala.Code 1975. All CON applications are reviewed by SHPA, which may, upon making certain required findings, grant or deny an application. See § 22-21-266, Ala.Code 1975.
In April 1990 Southeast's CON application was considered by SHPA's CON Review Board (Board) at a public hearing, where Montgomery Rehabilitation Hospital, Inc. (Montgomery Rehab), the licensed operator of an 80-bed rehabilitation hospital in Montgomery, appeared and presented arguments in opposition to Southeast's application. Despite Montgomery Rehab's opposition, the Board approved Southeast's CON application on April 10, 1990. Thereafter, Montgomery Rehab filed notice of appeal with SHPA and a petition for judicial review in the circuit court. Named as defendants in Montgomery Rehab's action were Southeast and SHPA.
In July 1991 the circuit court held oral proceedings, wherein the petitions and arguments of the parties were presented. The substance of Montgomery Rehab's position was that the December 7, 1989, revision to the Rehabilitation Rule (and to the SHP) was void because the SHCC had adopted it without complying with the rulemaking procedures of the Alabama Administrative Procedure Act (AAPA). Because, according to Montgomery Rehab, the revision was void, Southeast's CON application was inconsistent with the SHP, and the Board could not properly approve its application. Montgomery Rehab also argued in the alternative that the revision process was a "contested case" within the meaning of the AAPA and that the SHCC had failed to follow the AAPA's procedural requirements for contested cases when revising the Rehabilitation Rule. Additionally, Montgomery Rehab argued that the Board's decision to issue the CON to Southeast was not supported by substantial evidence in the record.
On August 19, 1991, the circuit court entered an order holding that the SHCC's change to the SHP was not a "rule" within the meaning of the AAPA and was therefore not subject to the rulemaking requirements of the statute. The court further held that the procedural requirements afforded to participants in contested cases were not applicable to the SHCC's revision of the Rehabilitation Rule. Finally, the court held that the Board's decision to grant a CON to Southeast was supported by substantial evidence in the record. Accordingly, it affirmed the Board's decision and entered a judgment for Southeast. Hence, this appeal.
Because the parties have stipulated that the SHCC did not follow the AAPA's procedural requirements for rulemaking and for contested cases when revising the Rehabilitation Rule, we find that there are three issues before this court on appeal:

*406 (1) Was the revision to the Rehabilitation Rule a "rule" within the meaning of the AAPA?
(2) Was the revision to the Rehabilitation Rule a "contested case" within the meaning of the AAPA?
(3) Was the circuit court correct in holding that the Board's decision to grant a CON to Southeast was supported by substantial evidence in the record?
As to the issue of whether the revision to the Rehabilitation Rule amounted to a "rule" within the meaning of the AAPA, the circuit court stated as follows in its final order:
"[A]t Alabama Code Section 41-22-3(9), the AAPA defines a `rule' as an `agency regulation, standard or statement of general applicability.' ... The Rehabilitation Rule adjustment is not a statement of general applicability. The adjustment does not pertain to all CON applications for inpatient rehabilitation beds statewide. Rather, the Rehabilitation Rule adjustment pertains only to an unmet need for rehabilitation beds in the Dothan area. Therefore, since the adjustment is not a statement of general applicability, it is not a `rule' subject to the AAPA's rulemaking procedures."
(Emphasis in original.) Montgomery Rehab, however, contends that the revision to the Rehabilitation Rule is both a statement of general applicability and a "rule" subject to AAPA rulemaking procedures. In support of its position, Montgomery Rehab cites Ex parte Traylor Nursing Home, Inc., 543 So.2d 1179 (Ala.1988), where our supreme court determined that an amendment to the SHP regarding authorization for "swing beds" in state hospitals was a "rule" for purposes of the applicability of the AAPA. The revision to the Rehabilitation Rule, Montgomery Rehab argues, is in substance and effect an "amendment" and is therefore subject to rulemaking procedures.
Southeast,[1] on the other hand, insists that the SHCC could legally revise the Rehabilitation Rule without complying with AAPA procedures. It contends that Montgomery Rehab's reliance on Traylor Nursing Home is misplaced because the revision to the Rehabilitation Rule is not an "amendment" but a "plan adjustment." According to SHP Rule 410-2-5-.05(3), plan adjustments, unlike plan amendments, "are not subject to the Alabama Administrative Procedure Act." Moreover, Southeast argues, the circuit court was correct in reasoning that because the adjustment to the Rehabilitation Rule pertains only to the Dothan area, the adjustment is not a "statement of general applicability."
The record indicates that the SHCC labeled its revision of the Rehabilitation Rule a "plan adjustment" and that the agency revised the rule in accordance with SHP Rule 410-2-5-.05, which specifically provides for plan adjustments. As defined by SHP Rule 410-2-5-.05(2)(a), a "plan adjustment" is
"[a] requested modification or exception to the SHP to permit additional facilities, beds, services, or equipment to meet the identified needs of a specific county, or part thereof, or another specific planning region that is less than statewide and identified in the State Health Plan."
Montgomery Rehab asserts that, in labelling the revision to the Rehabilitation Rule an "adjustment," the SHCC improperly sought to remove its actions from the scope of the AAPA by "trick of definition." The substance and effect of the agency action, Montgomery Rehab argues, should determine whether the AAPA is applicable to that action.
We recognize that the AAPA is to be construed broadly to effectuate the purpose of the act, which is to increase public interest and participation as well as to increase government accountability, see §§ 41-22-2 and -25, Ala.Code 1975. Consequently, we agree with Montgomery Rehab insofar as it asserts that the substance and effect of the SHCC's revision to the Rehabilitation Rule should determine whether the revision was subject to AAPA procedures. However, after carefully examining the agency action in this case, we *407 conclude that the revision to the Rehabilitation Rule was not a "rule" within the meaning of the AAPA and was therefore not subject to AAPA rulemaking procedures.
As previously noted, § 41-22-3(9), Ala. Code 1975, defines a "rule" as an "agency regulation, standard or statement of general applicability." We are in agreement with the circuit court in finding that the adjustment to the Rehabilitation Rule is not a statement of general applicability. The adjustment does not pertain to all CON applications for inpatient rehabilitation beds in Alabama. Rather, the adjustment is a modification of the Rehabilitation Rule pertaining only to an unmet need for beds in the Dothan area. Even though it is true that anyone could file a CON application for the 26 rehabilitation beds following the SHCC's adjustment of the rule, a CON applicant could apply to operate the 26 beds only in the Dothan area. Thus, the adjustment is limited in geographic scope and is not applicable to all potential and existing rehabilitation service providers statewide. As such, it is not "generally applicable." Our finding in this regard is consistent with the decision in Traylor Nursing Home, because the amendment at issue in that case was applicable to all CON applicants and CON applicants for the operation of swing beds statewide.
The adjustment to the Rehabilitation Rule differs from the swing bed amendment in Traylor Nursing Home in another significant respect. While the swing bed amendment involved the addition of language to the SHP prescribing new requirements for all healthcare providers in the state, the adjustment to the Rehabilitation Rule was contemplated in the language of the 1988-1992 SHP as it was originally adopted. Montgomery Rehab's contention that the adjustment established a new methodology for determining the need for rehabilitation beds in the state ignores the portion of the Rehabilitation Rule that recognized a potential accessibility problem and need for rehabilitation beds in the Dothan area. Thus, we conclude that the SHCC's revision of the Rehabilitation Rule was an anticipated adjustment of limited applicability that was clearly contemplated and authorized by the SHP then in existence. This adjustment was adopted in compliance with the revision procedures outlined in the SHP. Because the plan adjustment does not meet the definition of an "amendment" established in Traylor Nursing Home, we hold that it is not a rule subject to the AAPA's rulemaking procedures and affirm this part of the circuit court's judgment.
The next issue is whether the process of revising the Rehabilitation Rule constituted a "contested case" within the meaning of the AAPA. Section 41-22-3(3), Ala.Code 1975, defines a "contested case" as "[a] proceeding ... in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." The adjustment process in the present case did not determine the legal right, duty, or privilege of any party. Rather, by engaging in the adjustment process, the SHCC revised the Rehabilitation Rule as contemplated by the original language of the SHP. During this process, the SHCC did not grant or deny a CON to Southeast or any other party. To the contrary, after the Rehabilitation Rule was adjusted, any party was free to file a CON application to operate up to 26 rehabilitation beds in the Dothan area. Because no legal right, duty, or privilege of any party was determined during the adjustment process, we conclude that the process of revising the Rehabilitation Rule did not constitute a "contested case" within the meaning of the AAPA. Consequently, Montgomery Rehab was not, during the process, entitled to the procedural requirements afforded to participants in contested cases. We affirm this part of the circuit court's judgment.
The final issue that we must address is whether the circuit court was correct in holding that the Board's decision to grant a CON to Southeast was supported by substantial evidence in the administrative record. Under § 22-21-266, Ala.Code 1975, SHPA must make each of the following findings before granting a CON for new inpatient facilities:

*408 "(1) That the proposed facility or service is consistent with the latest approved revision of the appropriate state plan effective at the time the application was received by the state agency;
"(2) That less costly, more efficient or more appropriate alternatives to such inpatient service are not available, and that the development of such alternatives has been studied and found not practicable;
"(3) That existing inpatient facilities providing inpatient services similar to those proposed are being used in an appropriate and efficient manner consistent with community demands for services;
"(4) That in the case of new construction, alternatives to new construction (e.g., modernization and sharing arrangement) have been considered and have been implemented to the maximum extent practicable; and
"(5) That patients will experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service."
When granting Southeast's CON application, the Board made the five findings required by § 22-21-266.
Pursuant to § 41-22-20(k), Ala. Code 1975, SHPA's decision granting a CON is to "be taken as prima facie just and reasonable and [a reviewing] court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Such agency decisions are to be reviewed with an attendant presumption of correctness. Benton v. Alabama Board of Medical Examiners, 467 So.2d 234 (Ala.1985). Judicial deference to agency decisions is proper because "the special competence of the agency lends great weight to its reasoning and decision. When the legislature delegates a discretionary function to an agency with special competence, a court frustrates legislative intent and usurps that discretionary role by stepping in when the agency's choice is not clearly unreasonable or arbitrary." State Health Planning & Resource Development Administration v. Rivendell of Alabama, Inc., 469 So.2d 613, 614 (Ala.Civ. App.1985).
First, we conclude that the record supports the Board's finding of consistency with the SHP. Southeast's requested adjustment to the Rehabilitation Rule and the SHP was approved by the SHCC on December 7, 1989. On December 27, 1989, the Governor approved the adjustment, and consequently, the SHP reflected the need for 26 rehabilitation beds in the Dothan area. Because Southeast's CON application was received by SHPA in January 1990, after the approved revision to the SHP, we hold that the Board's finding that the beds proposed in Southeast's application are consistent with the current SHP is supported by substantial evidence in the record.
Second, we conclude that the record supports the Board's finding that there are no less costly, more efficient, or appropriate alternatives to the service proposed in Southeast's CON application. Southeast was the only healthcare provider to submit a CON application for the 26 beds in the Dothan area. The administrative record reveals that, before submitting its CON application, Southeast considered the possibility of not providing rehabilitation services for the Dothan area; however, evidence indicates that this alternative would be inappropriate because the SHCC has agreed with Southeast that a need for rehabilitation services exists in the Dothan area and because there are no rehabilitation facilities now available in that area. Evidence also shows that Southeast rejected the alternative of constructing a rehabilitation hospital off campus from its existing acute care facility because it would result in increased costs and the duplication of certain ancillary health services. Montgomery Rehab insists that Southeast should be required to convert some of its acute care beds into rehabilitation beds. However, there is evidence that the conversion of acute care beds would be adverse to the health care needs of Dothan area residents. The record indicates that Houston County is the only county in Alabama with a need for additional acute care beds. It is reasonable to assume that the conversion of acute care beds would exacerbate the county's existing acute care bed shortage and likely lead *409 to a need to construct more acute care beds. There is also evidence of a likely increase of the utilization of acute care facilities in Houston County due to the projected growth of Dothan's population.
Third, we conclude that there is substantial evidence supporting the Board's finding that existing inpatient facilities with services similar to those proposed by Southeast are being utilized efficiently and appropriately. Because, in fact, no inpatient physical rehabilitation facilities exist in the Dothan community, area residents who need rehabilitation services must travel over 90 miles to Montgomery, or further to other cities, in order to receive such care. The record indicates that Southeast projects that during the second year of operation, a rehabilitation hospital in the Dothan area would have an occupancy rate of 77%, 2% higher than the target occupancy rate of 75% set forth in the SHP. See SHP Rule 410-2-4-.05(4)(c)(1). Further, based on evidence provided by Southeast, the Board found that the net effect on Montgomery Rehab of Southeast's proposed facility would be only a 4.8% decrease in total discharges.
Fourth, we conclude that the record supports the Board's finding that alternatives to new construction have been considered or implemented to the maximum extent practicable. As noted above, the evidence indicates that, because of the shortage of acute care beds in Houston County, it would be infeasible for Southeast to convert its existing acute care beds for use as rehabilitation beds. Moreover, there was testimony at the administrative hearing that rehabilitation facilities require spacial configurations different from those of acute care facilities. Because of the therapeutic value to rehabilitation patients of developing independent movement, rehabilitation facilities require considerably more square footage per bed than acute care facilities.
Fifth, the evidence supports the Board's finding that, in the absence of the proposed new service, patients will experience serious problems in obtaining inpatient care of the type proposed by Southeast. Prior to the SHCC's adjustment of the Rehabilitation Rule, the SHP recognized the likelihood that Dothan area residents would encounter problems gaining access to inpatient rehabilitation services. The distance Dothan area residents are now required to travel to obtain rehabilitation services results in increased costs due to travel and lodging expenses, and may prevent many residents from getting care at all. Further, there is evidence that indigent and uninsured Dothan area residents in need of physical rehabilitation services have in the past been denied access to rehabilitation service in Montgomery. Southeast states that it accepts patients without regard to their ability to pay.
In view of the above, we conclude that the circuit court was correct in holding that the Board's decision to grant a CON to Southeast was supported by substantial evidence in the record. Montgomery Rehab asserts that, pursuant to § 41-22-16(b), Ala.Code 1975, the Board's order approving Southeast's CON application and making the required findings of § 22-21-266 is faulty, in that the Board fails explicitly to set forth all underlying evidence in support of its findings and instead merely "tracks" the language of § 22-21-266. However, in Ex parte Shelby Medical Center, Inc., 564 So.2d 63 (Ala.1990), and Ex parte Nursing Home of Dothan, Inc., 542 So.2d 940 (Ala. 1989), our supreme court, while recognizing the rationale of § 41-22-16(b), upheld the principle that by stating the ultimate findings listed in § 22-21-266, the Board may still be found in compliance with the requirements of the AAPA, if the administrative record supports the Board's ultimate findings. Because we hold that there is substantial evidence in the record of the Board's hearing to support the Board's ultimate findings, we find Montgomery Rehab's argument here to be without merit.
In view of the foregoing, we hold that the judgment of the circuit court upholding the decision of the Board is due to be affirmed.
AFFIRMED.
*410 THIGPEN, J., concurs.
ROBERTSON, P.J., concurs in result only.
NOTES
[1] We refer to the appellees, Southeast and SHPA, collectively as Southeast.