This appeal involves a circuit court's action overturning a decision by the State Health Planning and Development Agency ("SHPDA").
On May 6, 1996, Arcon Healthcare Services, Inc., d/b/a DeKalb Center for Healthcare, Inc. ("Arcon"), submitted a "Certificate of Need" (hereinafter "CON") application to SHPDA to construct on Sand Mountain in DeKalb County a clinic with a combined 24-hour emergency-care facility; a primary care facility; an ambulatory-surgery center; a comprehensive diagnostic center; and a full-service laboratory. *Page 178 
Pursuant to § 22-21-265, Ala. Code 1975, no person shall construct a new institutional health-service facility without first obtaining approval from SHPDA.
Baptist Health System, Inc. ("Baptist"), operates the only hospital in DeKalb County; its hospital is located in Fort Payne, in the valley below Sand Mountain. On June 20, 1996, Baptist intervened and opposed the ambulatory-surgery portion of Arcon's application, contending that there was insufficient need and that the project would detrimentally impact Baptist's volume of business.
On September 10, 1996, the SHPDA's CON Review Board held a public hearing in Montgomery to consider testimony and arguments from Arcon and Baptist. The SHPDA Board voted four to one to grant the CON to Arcon. Baptist subsequently requested a "fair hearing" pursuant to § 22-21-275(14). The hearing officer affirmed the SHPDA Board's decision. Baptist then petitioned the DeKalb County Circuit Court for review of the hearing officer's decision. The circuit court reversed the hearing officer's decision. Arcon appeals.
The dispositive issue is whether the trial court improperly reweighed the evidence in reversing the hearing officer's decision to award the CON to Arcon.
A decision by a state agency is presumed to be correct and will be affirmed unless it is arbitrary or capricious or fails to comply with the applicable law. Alacare Home Health Services,Inc. v. Baptist Hosp. of Gadsden, Inc., 655 So.2d 995
(Ala.Civ.App. 1994). The hearing officer's decision is the final decision of the SHPDA Board. § 22-21-275(14); Methodist Homes for theAging Corp. v. Stewart, 594 So.2d 161 (Ala.Civ.App. 1992). This court reviews the circuit court's ruling with no presumption of correctness, "since that court was in no better position to review the order of the Board than we are."
State Health Planning Resource Dev. Admin. v. Rivendellof Alabama, Inc., 469 So.2d 613, 614 (Ala.Civ.App. 1985).
Therefore, our review of this case is limited to determining whether the SHPDA Board's decision was made in compliance with the applicable law, whether the SHPDA Board's decision was arbitrary and unreasonable, and whether the SHPDA Board's decision was supported by substantial evidence. StateHealth Planning Agency v. Mobile Infirmary Ass'n, 608 So.2d 1372
(Ala.Civ.App. 1992); Health Care Authority of the City ofHuntsville v. State Health Planning Agency, 549 So.2d 973
(Ala.Civ.App. 1989). The weight or importance assigned to any given piece of evidence presented in a CON application is left primarily to the SHPDA Board's discretion, in light of the Board's recognized expertise in dealing with these specialized areas.State Health Planning Agency v. Mobile Infirmary Ass'n, 533 So.2d 255
(Ala.Civ.App. 1988).
Again, we note that Baptist's objections to Arcon's CON are based on the proposal for the ambulatory-surgery center, also known as "same-day" or "outpatient" surgery. However, Arcon says it cannot "clinically or economically" build the Sand Mountain clinic without the ambulatory-surgery center. It is worth noting that residents of Sand Mountain first approached Baptist with a request to build a total-healthcare facility on the mountain, but Baptist refused.
In its application, Arcon presented evidence indicating that there are no primary, emergency, or outpatient surgical facilities on the Sand Mountain plateau. Approximately 20,000 people currently live in the DeKalb County portion of Sand Mountain; they have to travel off the mountain to access routine healthcare facilities. There was evidence regarding the rural nature of the area and the vast problems associated with rural healthcare. According to a survey included in Arcon's application, 66% of the people residing on Sand Mountain drive between 40 to 70 miles for routine healthcare. *Page 179 
The SHPDA Board heard evidence indicating that the clinic will address Sand Mountain's healthcare access by offering a wide variety of medical services in one setting. Residents can visit a primary-care physician, as well as outpatient surgical services. Arcon stated that it would recruit specialists, such as gastroenterologists, from urban areas to rotate through the clinic so that residents could receive most of their healthcare locally. At the clinic, the residents could access urgent care on a 24-hour basis. The clinic's diagnostic facilities would allow residents to obtain mammographies, X-rays, and ultrasounds without having to travel off the mountain. Additionally, the clinic would have a laboratory to service the residents.
The SHPDA Board heard testimony from residents of Sand Mountain, each of whom testified that there was a genuine need for the clinic, based on the lack of facilities on the mountain. The residents testified that it is a 12-mile, 20-minute drive down the mountain from the city of Rainsville and a much longer drive from other areas on the mountain. From some areas, the drive can be as long as one hour. During inclement weather, the trip is difficult or impossible.
One resident testified:
 "And if everyone could speak here that came down today, you would hear — you would hear several stories, like I have through the years, of access problems with — with [Baptist]. We all have stories of going down at late hours of the night in the emergency room, extended waiting periods only to be met with physicians who are overworked and have a caseload that really they — they can't handle adequately. These are important issues that we feel like, as a community, Arcon can address.
". . . .
 "We are — like they said, geographically, we sit up on a plateau. And snow and ice, yes, that makes it virtually impossible to get off the mountain. The mountain is in and of itself a distinct region, and we are basically without adequate health-care access. And we would like for you to consider that."
Arcon presented a petition with over 2,000 signatures from Sand Mountain residents in support of the proposed clinic. Arcon's application contained a survey finding that 87% of the people on Sand Mountain supported the project. Arcon also included in its application 40 letters of support from officials in cities located on Sand Mountain and from other residents.
There was no challenge to Arcon's financial fitness or its expertise in healthcare. Baptist, through three of its employees, argued that the ambulatory-surgery center would duplicate services currently performed by Baptist. Baptist's contentions at the hearing were that outpatient surgery is the "lifeblood" of Baptist and that it uses revenues from outpatient surgery to fund less profitable indigent care or nonprofit services such as obstetrics and emergency care. Baptist argued that operation of Arcon's ambulatory-surgery center would cause Baptist to lose 1,000 outpatient surgeries per year and would result in an annual loss of $1 million to Baptist.
Arcon challenged Baptist's assumption that the ambulatory-surgery portion of the clinic would draw only from those patients who otherwise would go to Baptist, pointing out that area patients currently go to Gadsden, Chattanooga, and Birmingham, as well as to Baptist, for surgery. A SHPDA study indicated that 38% of inpatient surgical services performed for DeKalb County residents are performed outside DeKalb County.[1] Arcon presented further evidence to refute Baptist's contention, stating that the statewide average is 91.1 outpatient surgeries per year per 1,000 people and that Baptist's rate is 58.3 outpatient surgeries per year per 1,000 people; therefore, Arcon says, residents *Page 180 
are obviously leaving the county to receive these services. Arcon also argued that the standard for denying a CON is not merely "duplication" of services, but "unnecessary duplication." Arcon further argued that the duplication was necessary because of the lack of healthcare facilities for the 20,000 people who live on Sand Mountain.
The SHPDA Board members extensively questioned both Arcon and Baptist concerning duplication of services. One of the members noted their "disappointment" in Baptist's objection to the CON. Subsequently, the SHPDA Board voted four to one in favor of granting the CON to Arcon.
Baptist appealed to the hearing officer. The hearing officer found:
 "There was considerable testimony and documentary evidence concerning the need for greater access to healthcare in general in the Sand Mountain area. In this regard, the Order reflects that DeKalb County, including the area in which the project will be located, had been designated a `Health Professional Shortage Area' (`HPSA') by the Department of Health and Human Services. Baptist contends that the testimony and evidence concerning the need for more accessible primary care in the Sand Mountain area has no bearing on the issue of whether there is a need for construction of a surgical center. The record reflects, however, that there was substantial testimony supporting a finding of need for a full range of medical services in the Rainsville area, of which ambulatory surgery is one component."
The hearing officer noted that although there is evidence that some of the surgical patients to be served by the clinic will be diverted from Baptist, there was sufficient evidence to support a finding that the project would be complementary and supportive of the existing healthcare system, which would receive referrals from Arcon's Sand Mountain clinic.
The circuit court reversed the hearing officer's order, finding that there was a need for better access to primary-care services and emergency services, but in its inquiry it looked only to the need for outpatient or ambulatory surgery. The court concluded that the proposed clinic would impact Baptist's "profitable revenue streams" and that to permit Arcon to build the ambulatory-surgery clinic would be a duplication of services. The court stated that "the overwhelming weight of the evidence points to the conclusion that the need for outpatient surgical services is more than adequately met by [Baptist]."
A reviewing court's only role is to determine whether there is substantial evidence on the record to support the SHPDA Board's conclusion. The reviewing court is not to decide whether the evidence would have persuaded it to reach the same conclusion, but, rather, whether there was substantial evidence to support the Board's decision. Neither this court nor the circuit court may substitute its judgment for that of the SHPDA Board.
It is clear from the circuit court's order that it improperly reweighed the evidence presented to the SHPDA Board. For example, the court recognized the need for better access to primary and emergency care on Sand Mountain, but declared that the "need for any services other than ambulatory surgery is not pertinent to the inquiry." The fact that Baptist targeted its objection to the ambulatory-surgery portion of the clinic does not mean that the SHPDA Board's review was limited to that issue. The circuit court failed to recognize that the SHPDA Board must review the CON in light of the most recent Alabama State Health Plan. SHPDA Rule 410-1-6-.02. The State Health Plan regarding rural healthcare includes "comprehensive healthcare" for residents in rural areas. SHPDA Rule 410-2-2-.04(2)(h)(1). The SHPDA Board, in interpreting its rules, included the need for primary care and emergency care, as well as ambulatory surgery, in its decision. An agency's interpretation of its own rule or regulation must stand if it is reasonable, *Page 181 
even though it may not appear as reasonable as some other interpretation.Sylacauga Health Care Center, Inc. v. State Health Planning Agency,662 So.2d 265 (Ala.Civ.App. 1994).
Another example of the circuit court's reweighing the evidence is its finding that it would take no more than 15 minutes to get to Baptist from Sand Mountain. This finding completely disregards the ample evidence that the drive was much longer from other areas on the mountain and was sometimes impossible because of bad weather. The SHPDA Board was obviously concerned about the access problems caused by the geography of the Sand Mountain region and properly considered the evidence related to those problems.
The circuit court found that Arcon's clinic would be detrimental to the services provided by Baptist. Again, there was substantial evidence to support the SHPDA Board's determination that the impact to Baptist would be slight, especially in light of the number of residents already leaving the county for healthcare. Instead of recognizing this evidence, the circuit court improperly made its own findings of fact. The SHPDA Board is in the best position to determine the weight of the evidence. The role of the circuit court is to determine if there was substantial evidence on record to support the SHPDA Board's decision, not to make its own decision based on its view of the facts.
 "The criteria for a CON include availability and advantages of alternatives; need for the project; population statistics and growth; effect on existing facilities or services; expansion of existing services being favored over the establishment of new facilities; community reaction; access to medically underserved groups; and, whether the project complements and supports the existing health care system. SHPDA Rules and Regulations §§ 410-1-6-.04 to .08; see also Ala. Code 1975, § 22-21-264."
Alacare, supra, 655 So.2d at 996.
The SHPDA Board gave considerable weight to the substantial evidence concerning the need for improved accessibility to primary, emergency, and outpatient surgical care for the residents of Sand Mountain; the number of residents already leaving DeKalb County for care; the reluctance of Baptist, as the operator of the existing facility, to bring healthcare services to that area; the overwhelming community reaction in favor of the project; and the impact on the total healthcare system in DeKalb County.
We conclude that the SHPDA Board acted within its conferred powers, that its decision was supported by substantial evidence, and that its decision was reasonable and not arbitrary. Therefore, the judgment of the circuit court is reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
Robertson, P.J., and Monroe, Crawley, and Thompson, JJ., concur.
[1] SHPDA does not maintain records on "outmigration" of outpatient surgery.