THOMAS, Judge.
 

 Alaeare Home Health Services, Inc. (“Alacare”), appeals the judgment of the Jefferson Circuit Court, Bessemer Division, affirming a decision by the State Health Planning and Development Agency (“SHPDA”) to deny it a Certificate of Need (“CON”) to provide home-health services in Baldwin County. We affirm.
 

 Facts and Procedural History
 

 The State Health Plan (“SHP”) is a comprehensive plan prepared, reviewed, and periodically revised by the Statewide Health Coordinating Council and SHPDA, and approved by the Governor.
 
 See
 
 § 22-21-260(13), Ala.Code 1975; Rule 410-2-1-.02, Ala. Admin. Code (SHPDA). The SHP is designed to “provide for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the state.” § 22-21-260(13). To determine whether there is a need for home-health services in a particular county, the SHP uses a two-factor methodology, taking into account a county’s population, age 65 and older, and that county’s prior home-health-utilization rate, which is derived from agency reports. The 1996-1999 SHP, effective July 25, 1996, designated Baldwin County as 1 of 18 Alabama counties that was “possibly underserved” with respect to home health care. That designation was based upon data indicating that existing home-health providers in Baldwin County were serving 149 persons per 1,000 residents age 65 and older, whereas the SHP need methodology for home-health services had set the “need threshold” at 160 persons per 1,000 residents age 65 and older. On July 14, 2004, SHPDA published a Statistical Update to the SHP, indicating that the existing home-health providers in Baldwin County were serving only 104 persons per 1,000 residents age 65 and older and adjusting the “need threshold” to 129 persons per 1,000 residents age 65 and older. In 2004, Baldwin County had 24,392 residents who were age 65 or older. Accordingly, the Statistical Update found that 615 persons, age 65 and older, were underserved by home-health providers in Baldwin County.
 
 [1]
 

 
 *1271
 
 On August 23, 2004, Alacare filed an application with SHPDA for a CON to provide home-health services in Baldwin County. Two other home-health providers — Mid-Delta Health Systems, Inc. (“Mid-Delta”), and Kare-in-Home Services — also filed CON applications. Ala-care subsequently purchased Kare-in-Home Services; the two remaining applications by Alacare and Mid-Delta were opposed by intervenors Mid South Home Health Agency, Inc. (“Mid South”), and South Baldwin Regional Medical Center Home Health Agency (hereinafter referred to as the “South Baldwin Agency” in order to differentiate it from the South Baldwin Regional Medical Center hospital). After hearings on November 16, 2005, January 18, 2006, and July 19, 2006, the Certificate of Need Review Board (“CONRB”) denied the applications on August 3, 2006. Ala-care and Mid-Delta filed timely requests for a fair hearing pursuant to § 22-21-275(14), Ala. Code 1975. Mid South and the South Baldwin Agency intervened and participated in the fair hearing, which was conducted on January 16-19, 2007. The Fair Hearing Officer (“FHO”) considered the record of proceedings before the CONRB and the CONRB’s ruling on the applications, the testimony of 19 witnesses, and extensive documentary evidence introduced by the applicants and interve-nors/opponents.
 

 The evidence at the fair hearing established that there were 13 home-health agencies then serving Baldwin County. Five of those agencies had an office in Baldwin County pursuant to having been granted a CON, and eight agencies were serving Baldwin County pursuant to the contiguous-county rule.
 
 [2]
 
 At the time of the hearing, Alacare was providing home-health or hospice services in 64 of 67 Alabama counties. When Kare-in-Home Services, which had previously been granted a CON for Mobile County, was acquired by Alacare during the pendency of the CON proceedings, Alacare became eligible to serve Baldwin County patients pursuant to the contiguous-county rule. At the time of the fair hearing, Alacare was serving 16 Baldwin County home-health patients. Alacare applied for a CON for Baldwin County because the logistical difficulties inherent in serving Baldwin County patients from a Mobile office with Mobile staff made it apparent, according to Ala-care’s corporate representatives, that having a Baldwin County branch office was necessary in order to provide optimal care for its patients. Alacare projected that, if it were granted a CON for Baldwin County, it would serve 162 patients in its first year of operation and 264 patients in its second year. At the time of the hearing, Baldwin County had 24,392 residents who were age 65 and older and 13 existing home-health agencies serving its residents. Mobile County had 48,819 residents who were age 65 and older and 10 home-health agencies serving its residents. The SHP Statistical Update indicated that Mobile County was not underserved, despite the fact that it had twice the population and three fewer providers than Baldwin County-
 

 Alacare presented extensive evidence regarding its professional staff, state-of-the-art medical equipment, health-monitoring devices, and fiscal soundness. Chief Operating Officer Mark Cook acknowledged that Alacare had applied for a CON for Baldwin County strictly on the basis of the SHP’s designation of the county as “possi
 
 *1272
 
 bly underserved”; he admitted that Ala-care had not conducted any studies of its own indicating that there was a need for a new home-health provider in Baldwin County. He testified that it had been his experience that when a new provider with a CON comes into a county there is a beneficial effect because, he said, the more people who know about and publicize the benefits of home-health services, the better for all home-health providers.
 

 Nine representatives of other home-health providers
 
 [3]
 
 in Baldwin County and contiguous counties testified that, despite the SHP’s designation of Baldwin County as “possibly underserved,” they did not believe there was really a need for a new home-health provider in the county. Seven of those representatives said that, if there
 
 were
 
 actually a need, his or her agency could easily take on five to seven more patients each month without hiring additional staff. Two representatives said their agencies could assume the care of five to seven more patients each week. Randy Smith, the director of business development for LHC Group, Inc., a hospital-based home-health agency in Mobile, testified that, as a “grandfathered” CON agency, LHC Group could have opened a branch office in Baldwin County, but it chose not to do so because it did not believe there was a need for another home-health provider there. The representatives testified that their agencies employed marketing agents whose job it was to educate the community and its physicians about the benefits of home health care and to provide information about making home-health referrals. The evidence indicated that the marketing agents often met each other at community events and in physicians’ offices when they were engaged in promoting their services and, as one witness put it, “hustling” to get patient referrals. Dr. Ellis Allen, the medical director of the South Baldwin Agency, testified that he believed that most primary-care physicians and those who admit patients to the hospital were aware of the availability of home-health services and how to use them. He stated that, in his 14 years of medical practice, he had never had trouble referring a patient for home health care. The FHO heard testimony from six of the witnesses identified in note 3, supra, indicating that the addition of another home-health provider in Baldwin County would create employee-retention problems for the current providers, who were already experiencing the effects of a shortage of registered nurses, physical therapists, and occupational therapists, thereby resulting, the current providers said, in diminished continuity of care for patients.
 

 On July 3, 2007, the FHO issued a 33-page decision denying both CON applications. Pursuant to § 22-21-274(14), Ala. Code 1975, the FHO’s decision became SHPDA’s final decision. Alacare filed a timely notice of appeal with SHPDA and a brief in support of its petition for judicial review in the Jefferson Circuit Court, Bessemer Division. Mid-Delta did not appeal. Mid South and the South Baldwin Agency
 
 *1273
 
 filed a joint motion to intervene in the circuit court proceeding. The circuit court granted their motion and received briefs of the parties and intervenors/opponents. After conducting a record review,
 
 see
 
 § 41-22-20(j), Ala.Code 1975, the circuit court entered a judgment on May 2S, 2008, affirming SHPDA’s denial of Alacare’s CON application. Alacare filed a timely postjudgment motion, which the circuit court denied on August 29, 2008. Alacare appealed to this court on October 9, 2008, raising five issues on appeal.
 

 Standard of Review
 

 In
 
 Colonial Management Group, L.P. v. State Health Planning and Development Agency,
 
 853 So.2d 972, 974-75 (Ala.Civ.App.2002), this court discussed the principles that apply to appellate review of an administrative agency’s action.
 

 “This court reviews a trial court’s judgment regarding the decision of an administrative agency “without any presumption of its correctness, since [the trial] court was in no better position to review the [agency’s decision] than’ this court.
 
 State Health Planning & Res. Dev. Admin. v. Rivendell of Alabama, Inc.,
 
 469 So.2d 613, 614 (Ala.Civ.App.1985). Under the Alabama Administrative Procedure Act (‘AAPA’), § 41-22-1 et seq., Ala.Code 1975, which governs judicial review of agency decisions,
 

 “ ‘[e]xcept where judicial review is by trial de novo,
 
 the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.
 
 The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
 

 “ “(1) In violation of constitutional or statutory provisions;
 

 “
 
 “(2) In excess of the statutory authority of the agency;
 

 ‘“(3) In violation of any pertinent agency rule;
 

 “ “(4) Made upon unlawful procedure;
 

 “ “(5) Affected by other error of law;
 

 “ “(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 

 “‘(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.’
 

 “§ 41-22-20(k), Ala.Code 1975 (emphasis added). In reviewing the decision of a state administrative agency, ‘[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law.’
 
 Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council,
 
 628 So.2d 821, 823 (Ala.Civ.App.1993). ‘The weight or importance assigned to any given piece of evidence presented in a CON application is left primarily to the [CONRB’s] discretion, in light of the [CONRB’s] recognized expertise in dealing with these specialized areas.’
 
 State Health Planning &
 
 
 *1274
 

 Dev. Agency v. Baptist Health Sys., Inc.,
 
 766 So.2d 176, 178 (Ala.Civ.App.1999). Neither this court nor the trial court may substitute its judgment for that of the administrative agency.
 
 Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council,
 
 628 So.2d 821, 823 (Ala.Civ.App.1993). ‘This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.’
 
 Health Care Auth. of Huntsville v. State Health Planning Agency,
 
 549 So.2d 973, 975 (Ala.Civ.App.1989). Further, ‘an agency’s interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.’
 
 Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency,
 
 662 So.2d 265, 268 (Ala.Civ.App.1994).”
 

 Statutory Bases for the SHPDA Rules
 

 Section 22-21-264, Ala.Code 1975, establishes the minimum review criteria for CON applications. The criteria pertinent to Alacare’s application are (1) whether the application is consistent with the SHP, (2) whether there is a relationship between the services proposed and the applicant’s long-range development plan, (3) whether there are “alternative, less costly, or more effective methods of providing such services,” (4) whether there is “a substantially unmet public requirement for the proposed ... service,” and (5) whether the applicant is appropriate, or the most appropriate applicant in the event of duplicative applications.
 

 Section 22-21-266, Ala.Code 1975, provides that “[n]o [CON] for new ... services shall be issued” unless SHPDA makes each of the following findings:
 

 “(1) That the proposed facility or service is consistent with the latest approved revision of the appropriate state plan effective at the time the application was received by the state agency;
 

 “(2) That less costly, more efficient or more appropriate alternatives to such inpatient service are not available, and that the development of such alternatives has been studied and found not practicable;
 

 “(3) That existing inpatient facilities providing inpatient services similar to those proposed are being used in an appropriate and efficient manner consistent with community demands for services;
 

 “(4) That in the case of new construction, alternatives to new construction (e.g., modernization and sharing arrangement) have been considered and have been implemented to the maximum extent practicable; and
 

 “(5) That patients will experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service.”
 

 If SHPDA is unable to make any of the five findings required by § 22-21-266, then a CON “cannot be issued.”
 
 Nursing Home of Dothan, Inc. v. Alabama State Health Planning & Dev. Agency,
 
 542 So.2d 935, 939 (Ala.Civ.App.1988).
 

 Analysis
 

 I.
 
 Consistency with the SHP
 

 Section 22-21-264(1), § 22-21-266(1), Ala.Code 1975, and Rule 410-1-6-.02, Ala. Admin. Code (SHPDA), require that any proposed new health-care service be consistent with the SHP in effect at the time the CON application is received by the state agency. The FHO found that Ala-care’s CON application was
 
 inconsistent
 
 with the SHP. Alacare argues that the circuit court erred in upholding that find
 
 *1275
 
 ing. It contends that, because the 1996-1999 SHP designated Baldwin County as “possibly underserved” with respect to home-health services, thereby indicating, Alacare says, that new home-health providers were possibly needed, its application to be a provider for the “possibly under-served” Baldwin County population could not have been inconsistent with the SHP. We agree; Alacare’s CON application was not, as a matter of law, inconsistent with the SHP.
 

 The parties agreed that during the CONRB hearings on Alacare’s application, the chairman of the CONRB had questioned whether there really was an unmet need for home-health services in Baldwin County or whether the methodology underlying the conclusion that Baldwin County was “possibly underserved” was flawed. The parties also agreed that the methodology question was not resolved in the CONRB hearing. At the fair hearing, the opponents of Alacare’s application, Mid-South and the South Baldwin Agency, presented evidence indicating that the SHPDA need methodology was flawed, or at least inapplicable to Baldwin County. The opponents presented testimony indicating that, although Baldwin County has a sizeable population of residents who are 65 years of age and older, most of the senior citizens who live in Baldwin County are relatively affluent, active, and choose to live in the area because of recreational opportunities such as golf, tennis, and water sports. Thus, the opponents claimed, many of the residents who, based upon age alone, fall within the demographic group of potential home-health patients do not actually need home-health services. The opponents also presented evidence tending to show that, when Baldwin County senior citizens do reach the point at which they need home-health services, many move out of the county to be closer to relatives. Alacare countered that evidence by introducing statistical data showing that Baldwin County’s senior-citizen population is increasing and is projected to increase by almost 180% by the year 2025.
 

 To the extent that the FHO gave any weight to evidence indicating that the SHP need methodology was flawed with respect to Baldwin County it erred. A fair hearing on a CON application is not the proper forum in which to argue that the SHP need methodology should be revised. Revisions to the SHP may be accomplished in three ways, namely: (1) by a plan adjustment, which is “[a] requested modification or exception, to the SHP, of limited duration, to permit additional facilities, beds, services, or equipment to address circumstances and meet the identified needs of a specific county, or part thereof, or another specific planning region that is less than statewide and identified in the State Health Plan,”
 
 see
 
 Rule 410-2-5-.04(2)(a), Ala. Admin. Code (SHPDA); (2) by a statistical update, which is “[a]n update of a specific section of the SHP to reflect more current population, utilization, or other statistical data,”
 
 see
 
 Rule 410-2-5-.04(2)(b), Ala. Admin. Code (SHPDA); or (3) by a plan amendment, which is “[t]he alteration or adoption of rules, policies, methodologies, or any other plan revision that does not meet the plan adjustment or statistical update definition,”
 
 see
 
 Rule 410-2-5-.04(2)(e), Ala. Admin. Code (SHPDA) — all of which are accomplished by making an application to SHPDA,
 
 see
 
 Rule 410-2-5-04(3), Ala. Admin. Code (SHPDA).
 

 The FHO’s conclusion that Ala-care’s CON application was inconsistent with the SHP was “[a]ffected by [an] error of law,” § 41-22-20(k)(5), Ala.Code 1975, and “[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record,” § 41-22-
 
 *1276
 
 20(k)(6), Ala.Code 1975. Nevertheless, we conclude that, based upon a review of the entire record and the FHO’s findings with respect to the other criteria listed in §§ 22-21-264 and 22-21-126, the FHO’s error with respect to the inconsistency finding did not prejudice Alacare’s substantial rights within the meaning of the last sentence of § 41-22-20(k), or Rule 45, Ala. R.App. P.
 
 See, e.g., Humana Med. Corp. v. State Health Planning & Dev. Agency,
 
 460 So.2d 1295 (Ala.Civ.App.1984) (citing §§ 22-21-266(2) and (3), Ala.Code 1975, and affirming the denial of a CON, despite the fact that the CON application was consistent with the SHP, because the record contained substantial evidence indicating that there were less costly and more efficient alternatives to the proposed new health service and that there was no unmet community need for the service);
 
 Nursing Home of Dothan, Inc.,
 
 542 So.2d at 939 (holding that, if SHPDA is unable to make
 
 any
 
 of the five findings required by § 22-21-266, then a CON “cannot be issued”).
 

 Notwithstanding the FHO’s
 
 error
 
 with respect to the first criterion listed in § 22-21-266(1), the FHO’s findings with respect to two other criteria were supported by substantial evidence, were unaffected by an error of law that prejudiced Alacare’s substantial rights, and sufficed to deny Alacare a CON and to uphold the FHO’s decision. We will discuss the two other criteria in Parts III and IV of this opinion.
 

 II.
 
 The FHO’s Findings of Fact
 

 Alacare contends that the FHO’s conclusion, and thereby SHPDA’s conclusion, that Alacare’s CON application was due to be denied was not based on the record as a whole. Specifically, it claims that because the FHO summarized the testimony in a 12-page section of his order but allotted only 2 of those pages to the evidence presented by Alacare, he did not thoroughly consider and weigh Alacare’s evidence.
 

 Initially, we note that, of the 19 witnesses who testified at the fair hearing, 8 testified for Alacare, 6 testified for Mid-Delta, and 10 testified for the opponents of the CON application. Thus, that part of the FHO’s evidentiary summary that was addressed to the testimony of the opponents’ witnesses was naturally lengthier than the part addressed to Alacare’s witnesses. Moreover, as we have previously pointed out in Part I of this opinion, if SHPDA is unable to make
 
 any
 
 of the findings required by § 22-21-266, then a CON “cannot be issued.”
 
 Nursing Home of Dothan, Inc.,
 
 542 So.2d at 939.
 

 The FHO’s summary of the evidence presented by Alacare
 
 and by its opponents,
 
 Mid South and the South Baldwin Agency, focused primarily on testimony concerning two § 22-21-264 and § 22-21-266 findings that, the FHO concluded, could
 
 not
 
 be made based on the evidence presented at the fair hearing, namely: (1) that there was not a substantially unmet public need for the proposed new home-health service; and (2) that there were alternative, less costly, or more effective methods of providing the proposed home-health services.
 

 We cannot hold that the FHO, by concentrating on the evidence concerning issues that he considered dispositive, failed to consider and weigh the evidence on the other issues.
 
 Cf. Calvert v. Casualty Reciprocal Exch. Ins. Co.,
 
 523 So.2d 361, 362 (Ala.1988) (stating that a defendant is “entitled to summary judgment when it is shown that there is no evidence to support
 
 some element
 
 of the plaintiffs cause of action” (emphasis added)).
 

 III.
 
 Need
 

 The FHO determined that Alacare had “fail[ed] to establish” that there existed a substantially unmet need for home-health
 
 *1277
 
 services in Baldwin County.
 
 See
 
 § 22-21-264(4); §§ 22-21-266(3) and (5); and Rule 410-1-6-.05, Ala. Admin. Code (SHPDA).
 

 A. First, Alacare maintains that the circuit court erred in upholding that determination because, Alacare says, the determination was based upon the FHO’s finding that Alacare did not “provide persuasive evidence ... that any residents or referring physicians in the county have been unable to access [home-health] services when needed.”
 

 Rule 410-l-6-.05(l)(b), Ala. Admin. Code (SHPDA), states that in deciding whether there is a substantially unmet public need for the proposed health-care service, the CONRB and SHPDA should consider, among other things,
 
 “specific data
 
 supporting the demonstration of need for the proposed ... service.” (Emphasis added.) Citing
 
 Colonial Management Group, L.P. v. State Health Planning and Development Agency,
 
 supra, Alacare argues that it was not required to present “specific data” other than the demographic and statistical data in the SHP itself in order to establish the need for an additional home-health provider. In
 
 Colonial,
 
 this court stated:
 

 “On appeal, Colonial continues to argue that the CONRB’s decision is not supported by substantial evidence because [the CON applicant] failed to present statistical data demonstrating an unmet community need. However, there are no relevant statutory provisions or administrative regulations requiring [an applicant] to submit specific statistical data in support of its CON application. The relevant provisions provide that ‘specific data’ submitted by a CON applicant be ‘reasonable, relevant and appropriate.’
 
 See
 
 § 22-21-264(4)(b), Ala. Code 1975, and SHPDA Reg. 410-1-6-.05.”
 

 858 So.2d at 984.
 

 Alacare is correct in arguing that Rule 410-l-6-.05(l)(b) and
 
 Colonial
 
 do not mandate that a CON applicant present any particular
 
 type
 
 of “specific data” in order to establish an unmet need. Alacare met its initial burden of presenting specific data to establish an unmet community need.
 
 [4]
 
 Accordingly, to the extent that the FHO’s determination — that Alacare had “fail[ed] to establish” that there existed a substantially unmet need for home-health services in Baldwin County — can be interpreted as a conclusion about the
 
 sufficiency
 
 of Alacare’s proof, that determination was erroneous. Reading the FHO’s order in its entirety, however (and considering the FHO’s finding that Alacare did not “provide
 
 persuasive
 
 evidence ... ”), we believe that the FHO’s no-unmet-need determination addressed the
 
 weight
 
 of Alacare’s evidence,
 
 see Alpine Bay Resorts, Inc. v. Wyatt,
 
 539 So.2d 160, 162 (1988) (distinguishing between weight of the evidence and sufficiency of the evidence), and represented a conclusion that Alacare’s evidence, though sufficient, was less convincing than the evidence presented in opposition. Although Alacare was certainly entitled to rely
 
 only
 
 on the demographic and statistical data in the SHP itself to show an unmet need for home-health services in Baldwin County, the FHO was entitled to weigh in favor of the CON opponents the fact that Alacare admittedly did not undertake, or present evidence of, any
 
 other
 
 need analysis, especially given the uncertainty of the SHP designation that Baldwin County was
 
 *1278
 

 “possibly
 
 underserved” with respect to home health care.
 
 Compare State Health Planning & Dev. Agency v. West Walker Hospice, Inc.,
 
 993 So.2d 25, 27 (Ala.Civ.App.2008) (stating that the CON applicant “presented evidence indicating that it had ... consulted with in-home hospice programs to gauge the need for its facility, [and] had commissioned a needs analysis from an expert in elder care”).
 

 B. Second, Alacare contends that the FHO’s no-unmet-need determination was erroneous as a matter of law because, Alacare says, it was wholly based on an incorrect interpretation of the “specific data” requirement. We disagree. In fact, Alacare’s own argument — that the FHO spent 12 pages summarizing the opponents’ testimony and only 2 pages summarizing Alacare’s testimony' — which we have addressed in Part II of this opinion, undercuts the contention that the FHO based its conclusion that another home-health provider was not needed in Baldwin County solely on his misinterpretation of the “specific data” requirement. The vast majority of the FHO’s 12-page summary of the opponents’ evidence dealt with the opponents’ testimony that Baldwin County was not underserved, as demonstrated by the fact that physicians had no trouble referring patients to home-health agencies, that the existing agencies were “hustling” to get patient referrals, and that the existing agencies could easily take on additional patients without hiring extra staff. In fact, Gene Sykes, Alacare’s chief financial officer, acknowledged on cross-examination that if 8 of the 13 existing home-health providers served 7 additional patients each month, the annual new-patient increase would be 672, more patients than the 615 persons that the 2004 SHP Statistical Update had determined were underserved by home-health providers in Baldwin County.
 

 Based on such evidence, as well as Alacare’s admittedly not having undertaken any analysis to assess the need for its services in Baldwin County, the FHO was authorized to determine that Alacare had not persuaded him that there was a substantially unmet need for home-health services in Baldwin County.
 
 See
 
 § 22-21-264(4).
 

 “ ‘The weight or importance assigned to any given piece of evidence presented in a CON application is left primarily to the [CONRB’s] discretion, in light of the [CONRB’s] recognized expertise in dealing with these specialized areas.’
 
 State Health Planning & Dev. Agency v. Baptist Health Sys., Inc.,
 
 766 So.2d 176, 178 (Ala.Civ.App.1999). Neither this court
 
 nor
 
 the trial court may substitute its judgment for that of the administrative agency.
 
 Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council,
 
 628 So.2d 821, 823 (Ala.Civ.App.1993). ‘This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.’
 
 Health Care Auth. of Huntsville v. State Health Planning Agency,
 
 549 So.2d 973, 975 (Ala.Civ.App.1989).”
 

 Colonial Mgmt. Group, L.P. v. State Health Planning & Dev. Agency,
 
 853 So.2d at 975.
 

 C. The FHO heard testimony indicating that Alacare treats fewer indigent patients than other home-health agencies. The FHO’s findings of fact include the following:
 

 “Alacare Chief Financial Officer Gene Sykes testified that in the SHPDA fiscal year ending September 2004, Alacare provided services to either ‘116 or less’ Medicaid patients in Alabama. This was a total for the entire company which, at the time, was servicing 57 or 58 counties
 
 *1279
 
 in the state. During the same time period, Mercy Medical’s home-health agency provided care to 176 Medicaid patients
 
 in Baldwin County,
 
 Mid-South served 95 Medicaid patients
 
 in Baldwin County,
 
 the South Baldwin Agency served 24 Medicaid patients
 
 in Baldwin County,
 
 and Amedisys Home Health served IB Medicaid patients
 
 in Baldwin County.
 

 “This FHO finds this divergence in the service to indigent patients striking and finds that it bolsters the current Baldwin County providers’ contention that Alacare will come into Baldwin County, if its application were to be granted, and treat the more profitable patients leaving the current providers to maintain the same indigent patient case load but with less revenue-producing patient loads to offset the uncompensated or minimally-compensated patients.”
 

 The foregoing finding is supported by substantial evidence and properly serves as the underpinning for the FHO’s conclusion that Alacare’s CON application did not meet the policy guidelines of the SHP and SHPDA rules because it would have a “detrimental effect ... on existing healthcare facilities,” see Rule 410-l-6-.06(l)(e), Ala. Admin. Code (SHPDA), and because it “would not contribute to meeting the healthcare needs of traditionally medically underserved groups,”
 
 see
 
 Rule 410-1-6-.07(1), Ala. Admin. Code (SHPDA).
 

 The FHO also made the following finding of fact:
 

 “Ronald J. Beamon, ... the Chief Financial Officer for South Baldwin Regional Medical Center [hospital], ... has had over 21 years experience analyzing financial and operational concerns for healthcare operations, and he is a certified public accountant. Mr. Beamon testified that the home health agency as a ‘product line’ was a profitable venture for the hospital. In 2005, for instance, the hospital’s home health agency contributed $600,543 to the bottom line of the hospital. Likewise, in 2006, the home health agency contributed $478,242 to the hospital. Mr. Beamon testified that a ten percent (10%) reduction in the home-health agency’s profitability would lead to a marginal decrease of over $45,000 annually. A more drastic 30% decrease would lead to an estimated $136,800 annual decrease to the bottom line of the hospital. These figures are important, according to Mr. Beamon, because South Baldwin Regional Medical Center uses the additional money from its home health operations to fund other hospital functions and services that do not bring profit to the hospital. For example, Mr. Beamon testified that in 2005 the hospital provided over $15 million worth of uncompensated medical care to members of the Baldwin County community. Likewise, in 2006, and looking only at the Gulf Shores, Alabama area, the hospital provided over $1.5 million worth of uncompensated medical care; and during the same time period for the Orange Beach, Alabama area, the hospital provided almost one million dollars in uncompensated medical care to that community. According to Mr. Beamon, if the home health agency is not able to continue to contribute positively to the hospital’s bottom line, he, as CFO, would have the duty to examine expenses and determine whether certain unprofitable community outreach programs should be discontinued or curtailed.”
 

 Alacare argues that the FHO should not have considered the financial impact that a reduction in the profitability of the
 
 home-health agency
 
 administered by the South Baldwin Regional Medical Center hospital (“South Baldwin”) might have upon South
 
 *1280
 
 Baldwin’s
 
 hospital
 
 operations because that testimony violated Rule 410-l-6-.06(l)(e). That rule provides that in determining whether a need for a proposed health service exists, “[t]he probable effect of the proposed facility or service on existing facilities or services
 
 providing similar services to those proposed
 
 shall be considered.” (Emphasis added.)
 

 Alacare maintains that the FHO was barred from considering the financial impact on South Baldwin’s
 
 hospital
 
 operations because, when assessing what effect a new home-health provider will have on existing providers, only the effect on providers of “similar services,”
 
 ie.,
 
 home-health services, should be considered. We agree.
 

 “Administrative rules are subject to the same well-known maxims of construction as statutes.
 
 See generally
 
 73 C.J.S.
 
 Public Administrative Law & Procedure
 
 § 211 (2007). ‘The language used in an administrative regulation should be given its natural, plain, ordinary, and commonly understood meaning, just as language in a statute.
 
 Alabama Medicaid Agency v. Beverly Enterprises,
 
 521 So.2d 1329 (Ala.Civ.App.1987).’
 
 State Pers. Bd. v. Wallace,
 
 682 So.2d 1357, 1359 (Ala.Civ.App.1996).”
 

 Health Care Auth. of Athens & Limestone County v. Statewide Health Coordinating Council,
 
 988 So.2d 574, 591 (Ala.Civ.App.2008).
 

 The plain meaning of Rule 410-1-6-.06(l)(e) is that like comparators are to be used in assessing the effect of a proposed new health service on existing service providers. For purposes of the present case, a hospital and a home-health agency do not provide “similar services.”
 
 See Ex parte Shelby Med. Ctr., Inc.,
 
 564 So.2d 63, 69 (Ala.1990) (in deciding whether “existing inpatient facilities with
 
 services similar to those proposed
 
 ” were
 
 “being
 
 used in an appropriate and efficient manner consistent with community demands,” the court compared hospitals only to other hospitals).
 

 The FHO erred in considering the effect of Alacare’s proposed service on South Baldwin’s
 
 hospital
 
 operations. The FHO’s conclusion with respect to the effect of Alacare’s proposal on other
 
 home-health
 
 providers, however, was not affected by an error of law, was supported by substantial evidence, and was sufficient to uphold his determinations that Alacare’s proposal would have a “detrimental effect ... on existing health-care facilities” and “would not contribute to meeting the healthcare needs of traditionally medically under-served groups.”
 

 IV.
 
 Alternatives to the Proposed New Service
 

 In Part I of this opinion we held that the circuit court erred in affirming the FHO’s determination that Alacare’s CON application was inconsistent with the SHP but that the error did not prejudice Ala-care’s substantial rights because there were two other criteria that sufficed to deny Alacare a CON and to uphold the FHO’s decision. We have analyzed one of the two “other criteria” — that there was not a substantially unmet need for home-health services in Baldwin County,
 
 see
 
 § 22-21-264(4) — in Part III, supra.
 

 The second of the “other criteria” is found in § 22-21-264(3), § 22-21-266(2), and Rule 410-1-6-.04, which require SHPDA to consider the availability of “less costly, more efficient, more appropriate, or more effective alternatives to the proposed facility or service.” Rule 410-l-6-.04(l)(a) states that, “[i]n the consideration of the availability of alternatives,
 
 priority may be given to those alternatives that are in existence.”
 
 (Emphasis added.)
 

 
 *1281
 
 The FHO determined that granting Ala-care’s CON application would result in “failing] to use available, alternative, less costly and more efficient methods for providing [Baldwin County with home-health] service.” The circuit court affirmed that determination.
 

 We have previously set out the evidence that was presented at the fair hearing indicating that the existing home-health providers serving Baldwin County could absorb additional patients without hiring new staff or compromising the quality of patient care. Alacare presented evidence aimed at proving that if it were granted a CON it could operate as efficiently as the existing providers. Alacare’s witnesses testified that most of the administrative functions of the agency would be handled at its corporate office in Jefferson County; that it had existing staff in Mobile County, some of whom desired to relocate to Baldwin County; that it would not be required to hire a large permanent staff because it would rely to some degree on contract professionals such as physical therapists and occupational therapists; and, accordingly, that its Baldwin County staff could devote its time and attention to patient care as efficiently as any existing provider. The FHO was authorized not only to credit the existing providers’ evidence and to discount Alacare’s evidence on this point, but also to decide — even if it believed Alacare’s evidence — that the existing providers were entitled to priority, pursuant to Rule 410-l-6-.04(l)(a). The FHO’s findings and conclusions on this issue were supported by substantial evidence, and we are not permitted to substitute our judgment for that of the FHO, whose decision was SHPDA’s decision.
 
 Colonial Mgmt. Group, L.P. v. State Health Planning & Dev. Agency,
 
 858 So.2d at 975.
 
 See also Ex parte Shelby Med. Ctr.,
 
 564 So.2d at 69 (in reversing a decision by the Court of Civil Appeals that affirmed SHPDA’s decision to grant a CON, the Alabama Supreme Court held that there was substantial evidence showing “that less costly alternatives were available”).
 

 V.
 
 Claimed Errors Arising out of Proceedings in the Circuit Court
 

 The circuit court’s January 29, 2008, order established a briefing schedule for the parties and intervenors; the order further provided that, at the conclusion of the briefing schedule, the “matter shall be deemed submitted on the record.” In its May 2, 2008, reply brief to the circuit court, Alacare requested oral argument. On May 23, 2008, the circuit court rendered a judgment affirming SHPDA’s decision without hearing oral argument.
 

 A. Alacare argues that the circuit court violated the last sentence of § 41 — 22—20(j), Ala.Code 1975, which provides that, upon a petition for judicial review of an agency action in a contested case, “[t]he court, upon request, shall hear oral argument and receive written briefs.”
 

 On August 13, 2008, the circuit court held a hearing on Alacare’s post-judgment motion and stated that it would hear oral argument so that Alacare could “make its record.” At that time, Alacare made the same arguments to the circuit court that it had made in its principal brief and in its reply brief to that court, and that it now makes on appeal to this court, namely: (1) that the FHO’s decision erroneously determined that Alacare’s CON application was “inconsistent with the SHP”; and (2) that Alacare was not required to “present specific statistical data demonstrating an unmet community need” for home-health services in Baldwin County. We have addressed both arguments in this opinion. Accordingly, we conclude that if the circuit court erred by failing to
 
 *1282
 
 grant Alacare’s request for oral argument before it rendered its decision, that error did not injuriously affect Alacare’s substantial rights.
 
 See
 
 § 41-22-20(k) (last sentence), and Rule 45, Ala. R.App. P.
 

 B. On December 19, 2008, Alacare moved the circuit court and this court to supplement and correct the record, alleging that it had just discovered that the exhibits admitted at the fair hearing were omitted from the record that SHPDA was required to provide to the circuit court.
 
 See
 
 § 41-22-20(g), Ala.Code 1975. The circuit court denied Alacare’s motion to supplement and correct the record on the day the motion was filed. On December 23, 2008, Alacare filed an amended motion to supplement and correct the record and to suspend the time for filing briefs with this court. This court granted that motion; on February 10, 2009, we issued an order reinvesting the circuit court with jurisdiction to have the record amended to include the omitted exhibits and to render a judgment in light of the entire record within 28 days. The circuit court received the omitted exhibits from SHPDA on February 17, 2009. On March 9, 2009, the circuit court reaffirmed its May 23, 2008, judgment affirming SHPDA’s denial of Alacare’s CON application.
 

 Alacare argues that the circuit court erred by failing to conduct a review of the complete SHPDA record before rendering its May 23, 2008, judgment, and then, Ala-care says, the circuit court compounded that error by failing to consider carefully the exhibits in the supplemented record after it was reinvested with jurisdiction to “render a judgment in light of
 
 the
 
 entire record.” Alacare maintains that, because the circuit court’s March 9, 2009, judgment reaffirmed and adopted its May 23, 2008, judgment verbatim, it could not have conducted a meaningful and thorough review of the omitted exhibits.
 

 Absent any support in the record for Alacare’s argument, we presume that the circuit court complied with the instructions this court provided when we reinvested it with jurisdiction, that it reviewed the omitted exhibits, and that its March 9, 2009, judgment cured any prejudice to Alacare that may have arisen from the circuit court’s failure to review the omitted exhibits before it rendered the May 23, 2008, judgment.
 

 “It is well settled that an appellant has the burden of presenting a record containing sufficient evidence to show error by the trial court.
 
 Leeth v. Jim Walter Homes, Inc.,
 
 789 So.2d 243, 246 (Ala.Civ.App.2000)_‘ “This court cannot assume error, nor can it presume the existence of facts to which the record is silent.” ’
 
 Alfa Mut. Gen. Ins. Co. v. Oglesby,
 
 711 So.2d 938, 942 (Ala.1997) (quoting
 
 Newman v. State,
 
 623 So.2d 1171, 1172 (Ala.Civ.App.1993)).”
 

 Dolgencorp, Inc. v. Hudson,
 
 924 So.2d 727, 736 (Ala.Civ.App.2005).
 

 Conclusion
 

 After reviewing the administrative record and the arguments raised by Alacare, we conclude that the FHO’s decision was made in compliance with the applicable law or, to the extent it departed from the applicable law, that those departures did not prejudice Alacare’s substantial rights; that its decision was not arbitrary or unreasonable; and that the decision was supported by substantial evidence.
 
 State Health Planning & Dev. Agency v. Baptist Health Sys., Inc.,
 
 766 So.2d 176, 178 (Ala.Civ.App.1999). Therefore, we conclude that the circuit court did not err in affirming the FHO’s decision. The judgment of the Jefferson Circuit Court, Bessemer Division, is affirmed.
 

 AFFIRMED.
 

 
 *1283
 
 THOMPSON, P.J., and MOORE, J., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 PITTMAN, J., dissents, without writing.
 

 [1]
 

 . The difference between the new "need threshold” number of patients per 1,000 residents over 65 years old (129) and the number of patients per 1,000 residents over 65 years old actually being served by existing home-health providers (104) equals 25. That number (25) multiplied by 24.392 equals 609.8. The record contains no explanation for the discrepancy between 615 and 609.8.
 

 [2]
 

 . The contiguous-county rule permits a home-health agency to accept referrals of patients from counties contiguous to the county for which the agency holds a CON so long as the agency does not incur capital expenditures in excess of $500 or establish a branch office in the county of the referral.
 
 See
 
 § 22-21-265(f), Ala.Code 1975.
 

 [3]
 

 . Those representatives and providers are: Randy Smith, director of business development for LHC Group, Inc., in Mobile; Robert Hale, director of operations for Springhill Home Health and Hospice in Mobile; Robert Kyle Powell, consultant at Mercy Medical Hospital in Daphne; Traci Suire, account executive at Vanguard Home Health of Foley; Dr. Ellis Allen, medical director for the South Baldwin Agency; Beverly Mann, team leader of the home-health department of Thomas Hospital in Fairhope; Shawna Geri, director of the South Baldwin Agency; Pamela Campbell, branch manager of Baldwin County operations, Mid-South/Gentiva Corp.; and Berry Sowell, vice president of provider relations, Gentiva Corp.
 

 [4]
 

 . Alacare presented, among other things, evidence of population statistics and growth as well as current and projected utilization of home-health services. Evidence of that kind is expressly authorized by Rule 410-1-6-.06, which sets out the additional criteria for determining whether there is a need for a proposed service.